# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | :    **Chapter 11** |
| | : |
| **CRAFTWORKS PARENT, LLC,** *et al.,* | :    **Case No. 20-10475 (BLS)** |
| | : |
| **Debtors.**[1] | :    **Jointly Administered** |
| | : |
| | :    **Re: Docket No. 11** |

**INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**DIP Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), seeking entry of an interim order (this "**Interim Order**") and a Final Order (as defined herein) pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), 506, 507 and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court, District of Delaware (the "**Local Rules**"), *inter alia*:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Big River Breweries, Inc. (6292); Brew Moon Colorado, Inc. (5001); Chophouse License, LLC (2340); Craft Brewery Holding, Inc. (1228); CraftWorks Holdings, LLC (7163); CraftWorks Intermediate Co, LLC (9810); CraftWorks Parent, LLC (3345); CraftWorks Restaurants & Breweries Group, Inc. (4820); CraftWorks Restaurants & Breweries, Inc. (2504); CraftWorks Restaurants & Breweries, LLC (0676); GB Acquisition, Inc. (5175); GB Franchise, LLC (7716); GB Kansas, LLC (0924); GB Maryland, Inc. (6439); GB Parent, Inc. (1281); GBBR Texas, Inc. (9904); Gordon Biersch Brewery Restaurant Group, Inc. (8023); Harbor East Brewery, LLC (7759); Logan's Restaurants, Inc. (9987); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Kansas, Inc. (8716); Logan's Roadhouse of Texas, Inc. (2372); LRI Holdings, Inc. (4571); Old Chicago Franchising LLC (7249); Old Chicago of Colorado, Inc. (4857); Old Chicago of Kansas, Inc. (0606); Old Chicago Oregon, LLC (5083); Old Chicago Parker Crossing, Inc. (9218); Old Chicago Taproom, LLC (5838); Old Chicago Westminster, Inc. (5759); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); Rock Bottom Arizona, Inc. (4848); Rock Bottom License, LLC (9033); Rock Bottom of Minneapolis, Inc. (5762); Wadsworth Old Chicago, Inc. (4849); Walnut Brewery, Inc. (7405). The Debtors' mailing address is 3011 Armory Drive, Suite 300, Nashville, TN 37204.

authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority term credit facility (the "**DIP Facility**"; and the financial institutions party thereto from time to time as lenders, as provided in the DIP Credit Agreement, the "**DIP Lenders**"), comprised of (a) a new money multiple draw term loan facility in an aggregate principal amount of up to $23.0 million (the "**New Money DIP Facility**"; the new money loans made thereunder, the "**New Money DIP Loans**"); and (b) subject to entry of a Final Order, in connection with the funding of any New Money DIP Loans, a roll up loan facility (the "**Roll-Up DIP Facility**"; together with the New Money DIP Facility, the "**DIP Facility**"), pursuant to which the DIP Lenders shall be deemed to make loans under the Roll-Up DIP Facility (the loans under the Roll-Up DIP Facility, the "**Roll-Up DIP Loans**"; together with the New Money DIP Loans, the "**DIP Loans**") in an amount equal to five dollars for every dollar of New Money DIP Loans disbursed by such DIP Lenders (or their affiliates), which Roll-Up DIP Loans shall be deemed used to satisfy and discharge such DIP Lenders' (or their affiliates') claims with respect to the Prepetition First Lien Obligations (as defined herein) in an amount equal to the aggregate principal amount of New Money DIP Loans funded, in each case, pursuant to the terms and conditions of that certain *Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Credit Agreement**," together with the schedules and exhibits attached thereto, and all agreements, documents, instruments and amendments executed and delivered in connection therewith, the "**DIP Documents**"), by and among Craftworks Restaurants & Breweries, Inc.   ("**Craftworks**") and Logan's Restaurants, Inc. ("**Logans**," and together with Craftworks, the "**Borrowers**," and each a "**Borrower**"),

---

[2]     Capitalized terms used but not defined herein have the meanings given to them in the DIP Motion or the DIP Credit Agreement (as

Craftworks Holdings, LLC ("**Holdings**") and the other Credit Parties party thereto (Holdings, the Borrowers, and the other Credit Parties which are, in each case, Debtors in the Chapter 11 Cases, collectively, the "**DIP Parties**"), the DIP Lenders, and Fortress Credit Co LLC ("**Fortress**"), as administrative agent and collateral agent (in either such capacity and together with any successor thereto, the "**DIP Agent**"), for and on behalf of itself and the DIP Lenders, substantially in the form of **Exhibit A**, attached to the DIP Motion;

authorizing the Debtors, during the period from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the DIP Termination Date (as defined herein) (such period, the "**Interim Period**"), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Interim Order, to request extensions of credit (in the form of New Money DIP Loans) up to an aggregate outstanding principal amount of not greater than $12.0 million at any one time outstanding under the DIP Facility (collectively, the "**Interim Financing**");

authorizing the Debtors party thereto to execute and deliver the DIP Credit Agreement and any other agreements and documents related thereto, and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

authorizing the Debtors to enter into the DIP Facility and to incur all obligations owing thereunder and under the DIP Documents to the DIP Agent and DIP Lenders (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "**DIP Obligations**"), and granting the DIP Agent and DIP Lenders allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and in any Successor Case (as defined herein), subject to the Carve Out (as defined herein);

---

defined below), as applicable.

granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which liens shall have the priorities set forth herein and shall be subject to the Carve Out;

authorizing the Debtors to use any Cash Collateral in which the Prepetition Secured Parties (as defined herein) have an interest, and proceeds of the DIP Facility, in each case in accordance with this Interim Order and the DIP Documents, including in accordance with the Budget (subject to Permitted Variances, unless otherwise expressly specified in the DIP Credit Agreement) as required herein;

authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable and reimbursable under the DIP Documents or this Interim Order as such become due, including, without limitation, commitment fees, closing fees,  and the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' respective attorneys, advisors, accountants, and other consultants, in each case, as and to the extent provided in, and in accordance with, the applicable DIP Documents and this Interim Order;

authorizing the Debtors to continue to use their commercial card program  (the "**P-Card Program**") under the WellsOne® Commercial Card Agreement, dated on or around October 27, 2011 (as amended, restated, supplemented or otherwise modified from time to time, the "**P-Card Agreement**"), between the Debtors and Wells Fargo subject to the terms and conditions thereof and granting Wells Fargo automatically perfected superpriority security interests in and liens on the P-Card Carve-Out Collateral (as defined herein) on the terms set forth herein;

authorizing the Debtors to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents (as defined herein), and providing adequate protection to the Prepetition Secured Parties to the extent of any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral, including the Cash Collateral;

modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order, and to provide for the immediate effectiveness of this Interim Order; and

scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the First Day Declaration, the Declaration of Colin M. Adams in Support of the Debtors' Motion for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Authorizing the Debtors to Use Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief (the "**Adams Declaration**"), the DIP Documents, and the evidence submitted and arguments made at the interim hearing (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm

to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      **Petition Date**.  On March 3, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.      **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.     **Committee Formation**.   As of the date hereof, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not yet appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee subsequently appointed, a "**Creditors' Committee**").

E.     **Notice**.   Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F.     **Debtors' Stipulations**.   After consultation with their attorneys and financial advisors, and subject and without prejudice to, the rights of parties-in-interest, including any Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 38 herein, the Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs E(i)-(vii) and G below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

(i)     *Prepetition First Lien Facility*.   Pursuant to that certain First Lien Credit Agreement, dated as of November 1, 2018 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition First Lien Agreement**," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition First Lien Documents**") among (a) Holdings, (b) the Borrowers, (c) the other persons party thereto from time to time that are designated as "credit parties" (each a "**Prepetition First Lien Guarantor**"), (d) Fortress Credit Co LLC, as administrative agent and collateral agent (in such capacities, the "**Prepetition First Lien Agent**"), (e) the lenders from time to time party thereto (the "**Prepetition First Lien Lenders**"), (f) Wells Fargo Bank, National Association, as issuing lender with respect to certain letters of credit ("**Wells Fargo**" or the "**Issuing Lender**," and

together with the other Prepetition First Lien Lenders, the Prepetition First Lien Agent, and the other Secured Parties (as defined in the Prepetition First Lien Agreement), the "**Prepetition First Lien Parties**"), the Prepetition First Lien Parties provided term loans, and other financial accommodations to, and issued letters of credit for the account of, the Borrowers pursuant to the Prepetition First Lien Documents (the "**Prepetition First Lien Facility**").

(ii)     *Prepetition Second Lien Facility.*   Pursuant to that certain Second Lien Credit Agreement, dated as of November 1, 2018 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Second Lien Agreement**"; the Prepetition Second Lien Agreement and the Prepetition First Lien Agreement shall collectively be referred to as the "**Prepetition Agreements**") and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Second Lien Documents**," and collectively with the Prepetition First Lien Documents and the Intercreditor Agreement (as defined herein), the "**Prepetition Documents**") among (a) Holdings, (b) the Borrowers, (c) the other persons party thereto from time to time that are designated as "credit parties" (each, a "**Prepetition Second Lien Guarantor**"), (d) Wells Fargo, as administrative agent and collateral agent (in such capacities, the "**Prepetition Second Lien Agent**," together with the Prepetition First Lien Agent, the "**Prepetition Agents**"), and (e) the lenders from time to time party thereto (the "**Prepetition Second Lien Lenders**," and collectively with the Prepetition Second Lien Agent, and the other Secured Parties (as defined in the Prepetition Second Lien Agreement), the "**Prepetition Second Lien Parties**"; and together with the Prepetition First Lien Lenders, the "**Prepetition Lenders**") (the Prepetition First Lien Parties and Prepetition Second Lien Parties, collectively with the Prepetition Agents, the "**Prepetition**

8

**Secured Parties**"), the Prepetition Second Lien Parties provided term loans and other financial accommodations to the Borrowers pursuant to the Prepetition Second Lien Documents (the "**Prepetition Second Lien Facility**," and together with the Prepetition First Lien Facility, the "**Prepetition Secured Facilities**").

(iii)    *Prepetition Secured Obligations*.  Under the Prepetition First Lien Facility, the Prepetition First Lien Lenders provided to the Debtors party thereto (x) commitments in respect of term loans in the aggregate principal amount of up to $130,000,000, (y) commitments in respect of revolving loans in the aggregate principal amount of up to $3,000,000 and (z) commitments in respect of letters of credit in the aggregate principal amount of up to $6,000,000. Under the Prepetition Second Lien Facility, the Prepetition Second Lien Lenders provided to the Debtors party thereto commitments in respect of term loans in the aggregate principal amount of up to $35,000,000.  Immediately prior to the Petition Date, (1) the aggregate principal amount outstanding under the Prepetition First Lien Facility on account of term loans was not less than $129,000,000 (the "**Prepetition First Lien Term Loans**"), (2) the aggregate principal amount outstanding under the Prepetition First Lien Facility on account of revolving loans was not less than $3,000,000 (the "**Prepetition First Lien Revolving Loans**") and (3) the face amount of all issued and outstanding undrawn letters of credit was not less than $4,743,350.00 (the "**Prepetition L/C Obligations**") (such amounts on account of the Prepetition First Lien Term Loans, the Prepetition First Lien Revolving Loans and the Prepetition L/C Obligations, together with any accrued and unpaid interest, fees, expenses and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due,

owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition First Lien Documents, including all "Obligations" as defined in the Prepetition First Lien Agreement, the "**Prepetition First Lien Obligations**").  Immediately prior to the Petition Date, the aggregate principal amount outstanding under the Prepetition Second Lien on account of term loans was not less than $35,000,000 (such amounts, together with any accrued and unpaid interest, fees, expenses and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, and financial advisors' fees, and related expenses and disbursements)), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Second Lien Documents, including all "Secured Obligations" as defined in the Prepetition Second Lien Agreement, the "**Prepetition Second Lien Obligations**," and together with the Prepetition First Lien Obligations, the "**Prepetition Secured Obligations**").

(iv)     *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Documents, prior to the Petition Date:

(a)      pursuant to that certain Guaranty and Security Agreement, dated as of November 1, 2018, as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, each Borrower and each Prepetition First Lien Guarantor (collectively, the "**Prepetition Credit Parties**") jointly and severally guaranteed all of the Prepetition First Lien Obligations (except, each Borrower only guaranteed the obligations of each other Borrower), and granted to the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Parties, a lien on and security in all of its right, title and interest in (the

"**Prepetition First Liens**") substantially all of their respective assets (the "**Prepetition First Lien Collateral**"); and

(b)        pursuant to that certain Guaranty and Security Agreement, dated as of November 1, 2018, as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, each Borrower and each Prepetition Second Lien Guarantor jointly and severally guaranteed all of the Prepetition Second Lien Obligations (except, each Borrower only guaranteed the obligations of each other Borrower), and granted to the Prepetition Second Lien Agent, for the benefit of itself and the other Prepetition Second Lien Parties, a lien on and security interest in all of its right, title and interest in (the "**Prepetition Second Liens**") substantially all of their respective assets (the "**Prepetition Second Lien Collateral**," and together with the Prepetition First Lien Collateral, the "**Prepetition Collateral**"), subject to the relative priorities among the Prepetition Secured Parties set forth in the Prepetition Documents, including that certain Intercreditor Agreement.

(v)        *Priority of Prepetition Liens; Intercreditor Agreements*.  The Prepetition Agents and others entered into that certain Intercreditor Agreement, dated as of November 1, 2018 (as amended, restated, supplemented, or otherwise modified from time to time prior to the date hereof, the "**Intercreditor Agreement**") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Obligations with respect to the Prepetition Collateral.  Each of the Debtors under the Prepetition Documents acknowledged and agreed to the Intercreditor Agreement.

(vi)        *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations*.  As of the Petition Date:  (a) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise

11

permitted by the Prepetition Documents and any other lien arising as a matter of law (in each case, to the extent that such existing liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition First Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, the "**Permitted Prior Liens**")[4];(b) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non- avoidable obligations of the Prepetition Credit Parties enforceable in accordance with the terms of the respective Prepetition Secured Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees arising out of, based upon or related to the Prepetition Secured Facilities; (f) the Debtors have waived,

---

[4]    Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.   The right of a seller of goods to

discharged and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent and priority of the liens securing the Prepetition Secured Obligations (for the avoidance of doubt, subject and without prejudice to, the rights of parties-in-interest, including any Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 38 herein), and (g) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(vii) *Release.* Subject to paragraph 38, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Chapter 11Cases and any Successor Cases (as defined herein)) and any party acting by, through, or under the Debtors or their estates, hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the DIP Agent, the Prepetition Secured Parties, all former, current, and future DIP Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, professionals, directors, employees, advisors, consultants, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facility, the DIP Documents, the Prepetition Documents and/or the transactions contemplated hereunder or thereunder, including (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z)

---

reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition Liens and DIP Liens.

any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Agents, the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations that the Debtors may now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to this Court entering this Interim Order relating to the Debtors' secured lending relationship with the Prepetition Secured Parties and the DIP Parties.  For the avoidance of doubt, the releases contained herein in favor of the DIP Parties relating to the DIP Facility and DIP Documents shall not release any prospective claims and causes of action against the Releasees arising on or after entry of this Interim Order.

G.    **Cash Collateral**.  All of the Prepetition Credit Parties' cash, including any cash in deposit accounts (other than any Excluded Account, as defined in the Prepetition Agreements), wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

H.    **Findings Regarding Postpetition Financing**

(i)    *Request for Postpetition Financing*.  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein, to administer their Chapter 11 Cases and fund their operations in accordance with the Budget (as defined herein) (subject to Permitted Variances, unless otherwise expressly specified in the DIP Credit Agreement).  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance reasonably acceptable to the DIP Agent (acting at the direction of

DIP Lenders holding in excess of fifty percent (50%) of the outstanding loans and commitments under the DIP Facility (the "**Required DIP Lenders**")).  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens of the Prepetition Secured Parties on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, to the extent of any aggregate diminution in value resulting from, among other things, the Debtors' use, sale, or lease of Cash Collateral and other Prepetition Collateral, the subordination to the Carve Out (as defined herein), the priming (to the extent provided for herein) of the Prepetition Liens by the DIP Liens (as defined herein), and the imposition of the automatic stay ("**Diminution in Value**") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations and to administer these Chapter 11 Cases.  The ability of the Debtors to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest.  The

Debtors do not have sufficient available sources of working capital and/or financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*.  The DIP Facility is the best source of debtor in possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Interim Order.

(v)    *Use of Cash Collateral and Proceeds of the DIP Facility*.  As a condition to the Debtors' entry into the DIP Documents, the extensions of credit under the DIP Facility and the authorization to use Prepetition Collateral, including Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that Cash Collateral and the proceeds of the DIP Facility shall be used, in each case in a manner consistent

with the terms and conditions of this Interim Order and the DIP Documents and in accordance

with the budget (as the same may be modified from time to time consistent with the terms of the

DIP Documents and subject to such variances as permitted in the DIP Credit Agreement (such

variances, "**Permitted Variances**," and such budget, the "**Budget**")[5] and as otherwise provided

in this Interim Order and the DIP Documents, for:    (a) working capital;  (b) other general

corporate purposes of the Debtors; (c) permitted payments of the costs of administration of the

Chapter 11 Cases (including professional fees and expenses of the Debtors' professionals and

professionals retained by a Creditors' Committee (if appointed)); (d) payment of such prepetition

expenses as consented to by the DIP Agent (acting at the direction of the Required DIP Lenders),

and as approved by the Court; (e) payment of interest, fees and expenses (including without

limitation, legal and other professionals' fees and expenses of the DIP Agent and the DIP

Lenders owed under the DIP Documents); (f) payment of certain adequate protection amounts to

the Prepetition First Lien Parties, as set forth in paragraph 15 hereof; (g)  payment of the Carve

Out (which shall be in accordance with paragraph 35 of this Interim Order); (h) subject to and

following consummation of the sale or sales of all or substantially all of the assets of the Debtors

under section 363 of the Bankruptcy Code pursuant to the 363 Bid Procedures, payment of the

Wind-Down Reserve (which shall be in accordance with paragraph 35 of this Interim Order); and

(i) such other uses set forth in the Budget and permitted by the DIP Credit Agreement.

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP

Credit Agreement, the extensions of credit under the DIP Facility and authorization to use Cash

Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition First Lien Agent and

the Prepetition First Lien Lenders have agreed that, as of and commencing on the date of the

---

[5]    A copy of the initial Budget is attached hereto as **Exhibit B**.

Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order, the DIP Loan Documents, and the Intercreditor Agreement.

I.    **Adequate Protection**.  The Prepetition Agents, for the benefit of themselves and the Prepetition Secured Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral.  Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, subject in all respects to the Carve Out (as defined herein):  (i)  the Prepetition First Lien Parties will receive (a) to the extent of any Diminution in Value of their interests in the Prepetition Collateral, adequate protection liens and superpriority claims, as more fully set forth in paragraphs 11-13 herein, and (b) current payment of fees and expenses of the Prepetition First Lien Agent and Prepetition First Lien Lenders (including without limitation, legal and other professionals' fees and expenses of the Prepetition First Lien Agent represented by King & Spalding LLP ("**King & Spalding**"), as restructuring counsel, Hunton Andrews Kurth LLP ("**Hunton**"), as finance and acquisition counsel, and Grant Thornton LLP ("**Grant Thornton**"), as financial advisor, and one local counsel, whether arising before or after the Petition Date) in accordance with the procedures set forth in paragraph 15 herein; and (ii) the Prepetition Second Lien Parties will receive, to the extent of any Diminution in Value of their interests in the Prepetition Collateral and subject to the Intercreditor Agreement, adequate protection liens and superpriority claims, as more fully set forth in paragraphs 11-13 herein.

J.    **Sections 506(c) and 552(b)**.  In light of (i) the DIP Agent's and DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out; and (ii) the Prepetition Secured Parties' agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve Out and subordinate to the

DIP Liens, subject to and effective only upon entry of a Final Order, (a) the Prepetition Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP Agent, DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.    **Good Faith of the DIP Agent and DIP Lenders**.

(i)    *Willingness to Provide Financing*.    The DIP Lenders have indicated a willingness to provide the DIP Facility to the Debtors subject to: (a) entry of this Interim Order and, subsequently, the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' DIP Superpriority Claims and DIP Liens, and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.    The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are appropriate for secured financings to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.    The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Agent, DIP Lenders, the Prepetition First Lien Parties and the Prepetition Second Lien Parties, with the assistance and counsel of their respective advisors.    Use of Cash Collateral and

credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, DIP Lenders, the Prepetition First Lien Parties, and the Prepetition Second Lien Parties within the meaning of section 364(e) of the Bankruptcy Code.

(iii)    *Consent to DIP Financing and Use of Cash Collateral*.  Absent an order of this Court and the provision of adequate protection, consent of the Prepetition Secured Parties is required for the Debtors' use of Cash Collateral and the other Prepetition Collateral.  The Prepetition Secured Parties have consented, or are deemed pursuant to the Prepetition Documents to have consented, or have not objected to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

L.    **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

M.    **Notice of Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including, among others: (i) the U.S.  Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) King & Spalding LLP and Hunton Andrews Kurth LLP, as counsel to the Prepetition First Lien Agent; (iv) Morgan, Lewis & Bockius, LLP, as counsel to the agent under the Debtors' prepetition second lien debt facility, (v) all other holders of other debt instruments issued by the Debtors; (vi) all parties asserting liens against the Debtors' assets; (vii) counsel to equity holders of CW Parent; (viii) the state attorneys general for all states in which the Debtors operate; (ix) the U.S.  Attorney's Office for the District of Delaware; (x) the

Internal Revenue Service; (xi) any party that requests service pursuant to Bankruptcy Rule 2002; and (xii) any such other party entitled to notice under the Bankruptcy Rules and Local Rules.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     <u>Interim Financing Approved</u>.  The DIP Motion is granted on an interim basis as set forth herein, and the DIP Facility, in an amount up to the Interim Financing, is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case, subject to the terms and conditions set forth in the DIP Documents or this Interim Order, as applicable.  All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry.

**<u>DIP Facility Authorization</u>**

2.     <u>Authorization of the DIP Financing</u>.  The DIP Facility, in an amount up to the Interim Financing, is hereby approved on an interim basis.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents.  The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, any principal, interest, fees, expenses, and other

amounts described in the DIP Documents and this Interim Order, as such amounts become due and owing, without need to obtain further Court approval (except as otherwise provided herein or in the DIP Documents (including any related fee letters)), subject to and in accordance with the term hereof and thereof, including, without limitation, any closing fees and commitment fees, as well as any reasonable and documented fees and disbursements of the DIP Agent's and the DIP Lenders' professionals, as set forth herein and in the DIP Credit Agreement, whether or not such professional fees and disbursements arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order and the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.     <u>Authorization to Borrow.</u>  In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order and (ii) the DIP Termination Date, and subject to the terms, conditions, limitations on availability, and reserves set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit under the DIP Facility in the amount of the Interim Financing.

4.     <u>DIP Obligations</u>.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which

DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, under the DIP Documents or this Interim Order, including, without limitation, all principal, accrued and unpaid interest, costs, fees, expenses, and other amounts under the DIP Documents.  The DIP Parties shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date, except as provided in paragraphs 28 and 33 herein, and subject to the Carve Out requirements in paragraph 35 herein.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined herein), and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder, subject to paragraph 38 herein) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim,

23

cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.      <u>DIP Liens</u>.  In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "**DIP Liens**"), with the priorities set forth in paragraph 6 herein, on all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of, each of the DIP Parties (the "**DIP Collateral**"), including without limitation:  (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, and proceeds of the foregoing, wherever located, including insurance or other proceeds, (b) all owned real property interests and all leasehold real property interests and proceeds thereof, (c) subject to, and upon entry of, the Final Order, any avoidance actions brought pursuant to Chapter 5 of

24

the Bankruptcy Code ("**Avoidance Actions**") and the proceeds thereof, and (d) all other property of the DIP Parties that was not otherwise subject to valid, perfected, enforceable and nonavoidable liens on the Petition Date; provided, however, and notwithstanding anything in this Interim Order to the contrary, with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Interim Order, except as expressly permitted by the applicable lease or pursuant to applicable law, but rather that any liens shall be granted only on the economic value of, proceeds of sale or other disposition of, and any other proceeds or products of such leasehold interests.  Notwithstanding the foregoing, the DIP Collateral shall not include (and the DIP Liens shall not extend to) any assets held by the Debtors in trust, any "Excluded Assets" (as defined in the DIP Credit Agreement), and the P-Card Carve-Out Collateral.  Nothing herein shall limit, subordinate, or constitute a waiver of any rights and priorities of claimants with statutory trust rights, including those afforded under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et. seq or the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 et. seq. ("**PACA/PASA Trusts**").

6.    <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations are valid, automatically fully-perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out and shall otherwise be junior only to Permitted Prior Liens. Other than as set forth in this Interim Order or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other

Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code, other than in respect of any Prepetition First Lien Obligations that have been satisfied and replaced by Roll-Up DIP Loans (subject only to the Challenge Deadline and related provisions set forth in paragraph 38). No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.     <u>Superpriority Claims</u>.  Upon the entry of this Interim Order, the DIP Agent and DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (a "**DIP Superpriority Claim**") for all DIP Obligations:  (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Cases, at any time existing or arising, of any kind or nature as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.  Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, the DIP Superpriority Claim shall be subject in all respects to the Carve Out.

8.     <u>No Obligation to Extend Credit</u>.  Except as required to fund the Carve Out as set forth in paragraph 35, the DIP Agent and DIP Lenders shall have no obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such extensions of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent (acting at the direction of the Required DIP Lenders, as applicable, and in accordance with the terms of the DIP Credit Agreement).

9. <u>Use of Proceeds of DIP Facility</u>. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to Permitted Variances, unless otherwise expressly specified in the DIP Credit Agreement and except as otherwise provided in this Interim Order and the DIP Documents with respect to the Debtors' Professionals' fees), only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the terms and conditions in this Interim Order and the DIP Documents.

**Authorization to Use Cash Collateral**

10. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order (including, without limitation, paragraphs 33 and 39 hereof), the DIP Facility and the DIP Documents, and in accordance with the Budget (including Permitted Variances, unless otherwise expressly specified in the DIP Credit Agreement and except as otherwise provided under this Interim Order and the DIP Documents with respect to professional fees), the Debtors are authorized to use Cash Collateral until the DIP Termination Date. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget (including Permitted Variances, unless otherwise expressly specified in the DIP Credit Agreement and except as otherwise provided under this Interim Order and the DIP Documents with respect to professional fees).

11. <u>Adequate Protection Liens</u>.

(i) *Prepetition Adequate Protection Liens*. Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the

Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Credit Parties hereby grant to (x) the Prepetition First Lien Agent, on behalf of itself and the Prepetition First Lien Parties and (y) the Prepetition Second Lien Agent, on behalf of itself and the Prepetition Second Lien Parties, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "**Adequate Protection Liens**").

12. <u>Priority of Adequate Protection Liens</u>.

(i) The Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to: (1) Permitted Prior Liens; (2) the DIP Liens; and (3) in the case of any Adequate Protection Liens granted to the Prepetition Second Lien Parties, the Adequate Protection Liens and the Prepetition Liens of the Prepetition First Lien Parties. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against the DIP Collateral. For the avoidance of doubt, as among the Prepetition First Lien Parties and the Prepetition Second Lien Parties, the Adequate Protection Liens shall be subject to the Intercreditor Agreement.

(ii) Except as provided herein, including, without limitation, with respect to the Carve Out, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. Subject to the Challenge Deadline and related provisions of paragraph 38, the Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate

28

pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

          13.    <u>Adequate Protection Superpriority Claims</u>.

          (i)    *Prepetition Superpriority Claim*.  As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value (if any) of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, (x) the Prepetition First Lien Agent, on behalf of itself and the Prepetition First Lien Parties and (y) the Prepetition Second Lien Agent, on behalf of itself and the Prepetition Second Lien Parties, are each hereby granted as and to the extent provided by section 507(b) or the Bankruptcy Code allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (the "**Adequate Protection Superpriority Claims**").

          14.    <u>Priority of the Adequate Protection Superpriority Claims</u>.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code; *provided*, *however*, that the Adequate Protection Superpriority Claims shall be subject to the Carve Out and any applicable provisions of the Intercreditor Agreement, and shall be junior to the DIP Superpriority Claim.

          15.    <u>Adequate Protection Payments and Protections for Prepetition First Lien Parties</u>.  As further adequate protection (the "**Adequate Protection Payments**"), the Debtors are authorized to pay in cash, without the need for the filing of formal fee applications:  (i) immediately upon entry of this Interim Order, all reasonable and documented (in summary form)

accrued and unpaid out-of-pocket fees, costs, disbursements and expenses, of (x) the Prepetition First Lien Agent (limited, in the case of counsel, to all reasonable and documented out-of-pocket fees, costs, disbursements and expenses of King & Spalding, Hunton, Grant Thornton, and any successor counsel, and, to the extent necessary, one firm of local counsel (which payments may be made from proceeds of the DIP Facility) and (y) Wells Fargo as the Initial Issuing Lender and an Issuing Lender, solely in its capacity as such (limited, in the case of counsel, as to all reasonable and documented out-of-pocket fees, costs, disbursements and expenses of Morgan, Lewis & Bockius LLP, and any successor counsel, one firm of local counsel), in each case to the extent invoices for any such accrued and unpaid amounts are provided to the Debtors no later than two (2) Business Days prior to the Closing Date, and (ii) thereafter, all reasonable and documented (in summary form) prepetition and postpetition accrued and unpaid out-of-pocket fees, costs, disbursements and expenses of (x) the Prepetition First Lien Agent (limited, in the case of counsel, to all reasonable and documented out-of-pocket fees, costs, disbursements and expenses of King & Spalding, Hunton, and Grant Thornton) and any successor counsel, and, to the extent necessary, one firm of local counsel, and (y) Wells Fargo as the Initial Issuing Lender and an Issuing Lender, solely in its capacity as such (limited, in the case of counsel, as to all reasonable and documented out-of-pocket fees, costs, disbursements and expenses of Morgan, Lewis & Bockius LLP, and any successor counsel, on firm of local counsel), which payments shall be made within ten (10) business days (which time period may be extended by the applicable professional) following receipt by the Debtors, the Creditors' Committee, if any, and the U.S. Trustee (the "**Review Period**") of an invoice therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including as to any amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed

(except for financial advisors compensated on other than an hourly basis) and a summary description of services provided and the aggregate expenses incurred by the applicable professional firm; *provided*, *however*, that any such invoice (i) may be limited and/or redacted to protect privileged, confidential, or proprietary information and (ii) shall not be required to contain individual time detail (*provided* that such invoice shall contain (except for financial advisors compensated on other than an hourly basis) summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates).   The Debtors, the Creditors' Committee (if appointed), and the U.S.  Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) business days' prior written notice (but no more than fifteen (15) business days' notice) of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the basis for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto.

16.    <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, subject, in all respects, to the terms and conditions of the Intercreditor Agreement.

**<u>Provisions Common to DIP Financing and Use of Cash Collateral</u>**

17.     <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto without further order of the Court if:  (a) the amendment, modification, or supplement (i) is in accordance with the DIP Documents, and (ii) does not prejudice the rights of the Debtors or their estates in any material respect; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification or supplement is provided to counsel to the Creditors' Committee (if appointed) or any other statutory committee appointed in the Chapter 11 Cases, and the U.S. Trustee (collectively, the "**Notice Parties**"); and (c) notice of the amendment, modification or supplement is filed with the Court; *provided*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement, and *provided further* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard regarding such proposed amendment, modification, or supplement.

18.     <u>Budget Maintenance and Compliance</u>.   Commencing on the fifth Wednesday following the Petition Date and on the Wednesday of each week thereafter, the Borrowers will deliver to the DIP Agent and the Prepetition Agents an updated Budget for the subsequent 13-week period consistent with the form of the Budget delivered on the Closing Date, together with all customary supporting documentation as reasonably requested by the DIP Agent or any Prepetition Agent.  The use of borrowings under the DIP Facility shall be in accordance with the Budget (as updated from time to time, subject to the Permitted Variances, unless otherwise expressly specified in the DIP Credit Agreement, and except as otherwise provided under this Interim Order and the DIP Documents with respect to Debtors' Professionals' fees) and the terms and conditions set forth in the DIP Documents and this Interim Order;

*provided*, that, in the case of fees, costs and expenses of the DIP Agent and the Prepetition First Lien Agent, the Debtors shall pay such fees, costs and expenses in accordance with the DIP Documents and this Interim Order without being limited by the Budget.  The Budget and any updates thereto shall be subject to the approval of, and in form and substance acceptable to, the DIP Agent (acting at the direction of the Required DIP Lenders in their sole discretion).

19.    <u>Modification of Automatic Stay</u>.   The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:   (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, Adequate Protection Superpriority Claims, and liens related to the P-Card Program; (b) permit the Debtors to perform such acts as the DIP Agent, DIP Lenders, or the Prepetition Agents each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility and this Interim Order; and (d) authorize the Debtors to make, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order, the DIP Documents and the Prepetition Documents, as applicable.

20.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.   This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit

account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the DIP Obligations, the Prepetition Secured Parties, and the Prepetition Secured Obligations to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition Agents each are authorized, but not required, to file, subject to the terms and priorities of this Interim Order and the Intercreditor Agreement, as they in their respective sole discretion deem necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, or the Adequate Protection Liens.  The Debtors, without further consent of any party, are authorized to execute and deliver, upon request of the DIP Agent and/or the Prepetition Agents, all such financing statements, mortgages, notices, and other documents as the DIP Agent or the Prepetition Agents may reasonably request.  The DIP Agent and the Prepetition Agents, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments.  To the extent that any Prepetition First Lien Agent or Prepetition Second Lien Agent is, with respect to the DIP Collateral, the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control

agreements, or any other Prepetition Documents or is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  The Prepetition First Lien Agent shall serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

21.    <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Documents, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP Collateral in accordance with the DIP Credit Agreement until the DIP Obligations have been indefeasibly paid in full, in cash.  The reduction of any Prepetition Secured Obligations is subject to the preservation of rights provided in paragraph 38 herein.

22.    <u>Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties</u>.

(i)    The Debtors will, until the DIP Termination Date, (A) maintain books, records, and accounts to the extent and as required by the DIP Documents, (B) reasonably cooperate with, consult with, and provide to the DIP Agent and the DIP Lenders all such information and documents that any or all of the Debtors are obligated (including upon the request by the DIP Agent (acting at the direction of the Required DIP Lenders)) to provide under the DIP Documents or the provisions of this Interim Order, (C) upon reasonable advance notice, permit consultants, advisors, and other representatives of each of the DIP Agent (acting at the

direction of the Required DIP Lenders), the DIP Lenders, and the Prepetition Agents (acting at the direction of the "Required Lenders" (as such term is defined in the Prepetition First Lien Agreement or the Prepetition Second Lien Agreement, as applicable, the "**Required Lenders**") to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition First Lien Documents, (D) permit the DIP Agent (acting at the direction of the Required DIP Lenders), the DIP Lenders, and the Prepetition Agents (acting at the direction of the Required Lenders under the Prepetition First Lien Agreement or the Prepetition Second Lien Agreement, as applicable), and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (E) upon reasonable advance notice, permit the DIP Agent (acting at the direction of the Required DIP Lenders), the DIP Lenders, and the Prepetition First Lien Agent (acting at the direction of the Required Lenders), to conduct, at their reasonable discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral.

(ii) The DIP Agent (acting at the direction of the Required DIP Lenders) shall have the right to credit bid up to the full amount of the outstanding DIP Obligations (with respect to the Roll-Up DIP Loans, subject to entry of the Final Order and

subject to a Challenge provided for in paragraph 38 herein)  including any accrued interest and expenses, in any sale of DIP Collateral, as provided for in section 363(k) of the Bankruptcy Code, whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  Subject to entry of the Final Order, the Prepetition Agents (acting at the direction of the Required Lenders under the Prepetition First Lien Agreement or the Prepetition Second Lien Agreement, as applicable) shall have the right to credit bid up to the full amount of any of their remaining Prepetition First Lien Obligations or Prepetition Second Lien Obligations, as applicable, in any sale of Prepetition Collateral, as provided for in section 363(k) of the Bankruptcy Code, whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject, in each case, to the rights and duties of the parties under the Intercreditor Agreement and to the satisfaction of the DIP Obligations, or as otherwise consented to by the DIP Agent (at the direction of the Required DIP Lenders).  The relief set forth in this paragraph 22(iii) shall in all events be subject to a Challenge provided for in paragraph 38 herein.  For the avoidance of doubt, neither the DIP Agent (acting at the direction of the Required DIP Lenders) nor the Prepetition Agent (acting at the direction of the Required Lenders) shall have any right to credit bid on any assets constituting the PACA/PASA Trusts or any proceeds thereof.

23.   <u>Proceeds of Subsequent Financing</u>.   If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations, and the termination of the

DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents and the Intercreditor Agreement.  For the avoidance of doubt, if the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Chapter 11 Cases, or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code section 364(d) at any time prior to the indefeasible repayment in full of the Prepetition Secured Obligations, the Prepetition Secured Parties' rights to object to the Debtors' use of Cash Collateral and assert a lack of adequate protection shall be fully preserved.

24.     Cash Collection.  From and after the date of the entry of this Interim Order, the Debtors shall maintain cash management consistent with prepetition practices and in accordance with the Cash Management Order.  Except as otherwise permitted in the Cash Management Order or otherwise agreed to in writing by the DIP Agent (acting at the direction of the Required DIP Lenders) and the Prepetition First Lien Agent (acting at the direction of Required Lenders), the Debtors shall maintain no accounts except those identified, or open or closed in accordance with the procedures set forth in, the Cash Management Order.  The Debtors and the financial institutions where the Debtors maintain deposit accounts (as identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such deposit accounts upon receipt of any direction to that effect from the DIP Agent (acting at the direction of the Required DIP Lenders), but subject to any rights, interests and remedies of depository and disbursement banks and other financial institutions under their existing deposit agreements with the Debtors and subject to the provisions of the Cash

Management Order.  Within twenty (20) days of the Closing Date, the Debtors shall enter into one or more deposit account control agreements with respect to all accounts identified in the Cash Management Order (other than Excluded Accounts (as defined in the DIP Credit Agreement) and any accounts holding the P-Card Carve-Out Collateral) in favor of the DIP Agent for the benefit of the DIP Lenders.

25.     <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations and the termination of the DIP Agent and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date in accordance with the Cash Management Order, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Agent (acting at the direction of the Required DIP Lenders) or as otherwise required by the DIP Documents.  For the avoidance of doubt, at any time prior to the indefeasible repayment in full of the Prepetition Secured Obligations, the Prepetition Secured Parties' rights to object to the Debtors' use of Cash Collateral and to assert a lack of adequate protection as a result of the Debtors' failure to (a) insure the DIP Collateral as required under the Prepetition Documents or (b) maintain the cash management system in effect as of the Petition Date shall be fully preserved.

26.     <u>Reserved</u>.

27.     <u>P-Card Program</u>.  The Debtors are authorized to continue to use the P-Card Program subject to the terms and conditions thereof and the Card Agreement.  Wells Fargo is authorized to make advances from time to time to the Debtors under the P-Card Program with a maximum exposure at any time up to $75,000.00.  Wells Fargo may rely on the representations

of the Debtors with respect to their use of the P-Card Program and Wells Fargo shall not have any liability to any party for relying on such representations.  All prepetition charges and fees related to the P-Card Program are authorized and required to be paid.  Any indebtedness owed by the Debtors to Wells Fargo in respect of the P-Card Program and under the Card Agreement shall continue to be secured by funds at Wells Fargo deposited by the Debtors to fully cash collateralize the obligations under the P-Card Program pursuant to the terms of that certain Security Agreement: Card Obligations, dated as of February 21, 2020 (all such collateral at any time and from time to time, the "**P-Card Carve-Out Collateral**").  Notwithstanding anything herein to the contrary, Wells Fargo shall continue to have valid and perfected, non-avoidable first-priority liens in and security interests on the P-Card Carve-Out Collateral (and any proceeds thereof) pursuant to Bankruptcy Code section 364(d)(1) with respect to the indebtedness owed by the Debtors to Wells Fargo under the P-Card Program.  Such liens and interests shall not be primed by any lien granted to any post-petition lender or other person or by the Carve-Out.

28.    <u>DIP Termination Date</u>.  On the DIP Termination Date, except as provided in paragraph 30 and subject to the Carve Out, (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 35 with respect to the Carve Out, and (b) all authority to use Cash Collateral shall cease.  For the purposes of this Interim Order, the "DIP Termination Date" shall have the meaning provided in the DIP Credit Agreement.

29.    <u>Events of Default</u>.  Until the DIP Obligations are indefeasibly paid in full and all commitments thereunder are terminated (the "**DIP Repayment**"), the occurrence of any of the following events, unless waived by the DIP Agent (acting at the direction of the Required DIP Lenders) in writing and in accordance with the terms of the DIP Credit Agreement, shall

constitute an event of default (collectively, the "**Events of Default**") under this Interim Order:
(a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions,
covenants, or obligations under this Interim Order (except where such failure would not
adversely affect the DIP Agent and the DIP Lenders), or (b) the occurrence of any other "Event
of Default" under, and as defined in, the DIP Credit Agreement.

          30.   <u>Rights and Remedies Upon Event of Default</u>.  (a) The automatic stay
provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to
permit the DIP Agent (acting at the direction of the Required DIP Lenders) to enforce all of their
rights under this Interim Order and the DIP Documents and, immediately upon the occurrence
and during the continuation of an Event of Default and the giving by the DIP Agent (acting at the
direction of the Required DIP Lenders) of three (3) business days' prior written notice (the
"**Termination Notice**"; and such notice period, the "**Remedies Notice Period**," provided that
such period may be extended by written agreement between the Debtors and the DIP Agent
(acting at the direction of the Required DIP Lenders), in their respective sole discretion),
delivered to counsel to the Debtors, with copies to the U.S. Trustee and counsel to the Creditors'
Committee (if appointed), subject in all respects to the terms of this Interim Order, including
clause (b) below, (1) the DIP Agent (acting at the direction of the Required DIP Lenders) may
declare (any such declaration shall be referred to herein as a "**Termination Declaration**") (w) all
DIP Obligations owing under the respective DIP Documents to be immediately due and payable,
(x) the termination, reduction or restriction of any further commitment to extend credit to the
Debtors to the extent any such commitment remains outstanding under the DIP Facility,
(y) termination of the DIP Credit Agreement and the DIP Documents as to any future liability or
obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or

41

the DIP Obligations and (z) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtors; and (2) the DIP Agent (acting at the direction of the Required DIP Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "**Termination Date**").  Following the DIP Repayment (as defined herein), the Prepetition First Lien Agent (acting at the direction of the Required Lenders) shall be entitled to make a Termination Declaration with respect to the foregoing clause (1) subclause (z) and clause (2) in accordance with the same procedures set forth herein.  The Termination Declaration shall be given by electronic mail to counsel to the Debtors, counsel to the Prepetition Agents, counsel to a Creditors' Committee (if appointed), and the U.S.  Trustee.  Upon termination of the Remedies Notice Period, unless the Court orders otherwise during such period, and subject to clause (b) below:  (A) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the respective DIP Documents and this Interim Order and shall be permitted to satisfy the relevant DIP Obligations, DIP Superpriority Claim and DIP Liens, subject to the Carve Out, (B) the applicable Prepetition Secured Parties shall be entitled to exercise their rights and remedies to satisfy the relevant Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims and Prepetition Adequate Protection Liens, subject to and consistent with (i) the Carve Out, (ii) this Interim Order, and (iii) the Intercreditor Agreement.  Unless the Court orders otherwise, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, subject to the Carve Out in all respects, including the requirements of

paragraph 35 hereof, the DIP Agent, DIP Lenders, and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court, consistent with the Intercreditor Agreement.

(b)     Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, during the Remedies Notice Period, the Debtors shall be permitted to use proceeds of the DIP Facility and cash on hand, including Cash Collateral, to (1) fund the Carve Out Reserves and pay any amounts in accordance with the Carve Out, and (2) subject to the consent of the DIP Agent (at the direction of the Required DIP Lenders), pay (x) accrued wages and any other critical employee-related expenses and (y) any other critical business-related expenses, necessary to operate the Debtors' business or preserve the DIP Collateral as determined by the Debtors in their reasonable discretion and in good faith.

31.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Agent, DIP Lenders, and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified or amended by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification or amendment shall not affect the validity and enforceability of any advances previously made hereunder, or any lien, claim or priority authorized or created hereby.

32.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and expenses of the DIP Agent and DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents (including, for the avoidance of doubt, the non-refundable payment to the DIP Agent and the DIP Lenders of the commitment fees set forth in the DIP Credit Agreement), whether or not the transactions contemplated hereby are consummated, including attorneys' fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, in each case to the extent provided for in this Interim Order and the DIP Documents. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Agent, the DIP Lenders, and the Prepetition First Lien Agent shall not be required to comply with the U.S.  Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide copies of its fee and expense statements or invoices in summary form (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S.  Trustee and counsel for a Creditors' Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors.  No attorney or advisor to the DIP Agent, DIP Lenders, or the Prepetition First Lien Agent shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (x) the DIP Agent or DIP Lenders in connection with or with respect to the DIP Facility, or (y) the Prepetition First Lien

Parties in connection with or with respect to the Prepetition First Lien Facility, are, in each case, hereby approved in full; *provided that* fees, costs and expenses paid to or on the account of the Prepetition First Lien Parties shall be subject to disgorgement upon a successful Challenge as provided for in paragraph 38.

33.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Credit Agreement.

34.    <u>Proofs of Claim</u>.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the Prepetition Agents, in each case, on behalf of themselves and the applicable Prepetition Secured Parties, are hereby authorized and entitled, in their respective sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a single, consolidated, master proof of claim and/or aggregate proofs of claim on behalf of the applicable Prepetition Secured Parties, and may file such master claims in the lead Chapter 11 Case, or any Successor Cases, for any claim allowed herein, and such claim shall be deemed filed in every case jointly administered with such case.  Any proofs of claim filed by any Prepetition Agent or any Prepetition Lender shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by such Prepetition Agent or any Prepetition Lender.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties.

35.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Interim Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, and solely to the extent set forth in the Budget, all accrued and unpaid fees, disbursements, costs and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee (if any), pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Estate Professionals**") at any time before or on the first business day following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice, whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; (iv) a wind-down reserve (the "**Wind-Down Reserve**") in the amount of $500,000 (which amount is inclusive of the amounts funded for the Post-Carve Out Trigger Notice Cap (as defined herein)) to be used by the Debtors for the purposes of administering these Chapter 11 Cases and prosecuting and confirming a chapter 11 plan of reorganization or liquidation, provided that the funding of such Wind-Down Reserve is strictly subject to and conditioned on the consummation of the sale or sales of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code in accordance with the 363 Bid Procedures; and (v) (a) Allowed Professional Fees of Estate Professionals in an

46

aggregate amount not to exceed $250,000 incurred after the first business day following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise plus (b) solely for the benefit of Configure Partners, LLC ("**Configure Partners**"), an amount equal to any M&A Transaction Fee (as defined in Configure Partners' engagement letter with the Debtors dated February 10, 2020, which may be amended from time to time in an manner acceptable to Configure Partners, the Debtors and the DIP Agent) allowed by the Bankruptcy Court and payable to Configure Partners, pursuant to, and consistent with, Configure Partners' engagement letter with the Borrowers, as a result of the closing of any M&A Transaction (as defined in Configure Partners' engagement letter) consented to by the DIP Agent and the Required DIP Lender (the amounts set forth in this clause (v) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Required DIP Lenders to the Debtors), their lead restructuring counsel, the U.S.  Trustee, and counsel to the Creditors' Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)      Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following entry of this Interim Order, each Estate Professional shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, the "**Estimated Fees and Expenses**") incurred during the preceding week by such Estate Professional (through Saturday of such week, the "**Calculation Date**"), along with a good faith estimate of the cumulative total amount of

reimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Weekly Statement**"); provided, that within one business day of the occurrence of the Carve Out Trigger Notice, each Estate Professional shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the date of the Carve Out Trigger Notice.

(c)    Funded Reserve Account.  On a weekly basis, the Debtors shall fund from the DIP Facility or cash on hand into a segregated escrow account (the "**Funded Reserve Account**") held by Katten Muchin Rosenman LLP in trust for the benefit of Estate Professionals an amount (the "**Funded Reserve Amount**") equal to the sum of the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, or if an estimate is not provided, the total budgeted weekly fees of Estate Professionals for the prior week set forth in the Budget.  For the avoidance of doubt, the DIP Lenders shall have no obligation to fund aggregate fees and expenses in excess of the amounts set forth in the Budget. Upon entry of this Interim Order, the Debtors shall fund an amount equal to the Post-Carve Out Trigger Notice Cap into the Funded Reserve Account.  The Debtors shall use funds held in the Funded Reserve Account exclusively to pay Professional Fees (with amounts reserved for the benefit of payment of the Configure Partners' fees to be used solely for payment of the Configure Partners' fees) as they become allowed and payable pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local bankruptcy rules of the Bankruptcy Court, and any interim or final orders of the Bankruptcy Court; *provided that* when all Allowed Professional

Fees have been paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court), any funds remaining in the Funded Reserve Account shall revert to the Debtors for use in a manner consistent with the DIP Credit Agreement and the DIP Orders. Funds transferred to the Funded Reserve Account shall not be subject to any liens or claims granted to the DIP Lenders herein or any liens or claims granted as adequate protection, shall not constitute DIP Collateral, and shall not constitute cash collateral or assets of the Debtors' estates; *provided*, that, notwithstanding anything to the contrary herein or in the DIP Documents, the DIP Collateral shall include the Debtors' reversionary interest in funds held in the Funded Reserve Account, if any, after all Allowed Professional Fees are satisfied in full.

(d)    On the day on which a Carve Out Trigger Notice is given by the DIP Agent (at the direction of the Required DIP Lenders) (the "**Carve Out Trigger Notice Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (including any Cash Collateral) to fund the Funded Reserve Account in an amount equal to the then unpaid amounts of Estimated Fees and Expenses to pay unpaid Allowed Professional Fees prior to any and all other claims. The Debtors also shall deposit and hold in trust in the Funded Reserve Account an amount equal to the Post-Carve Out Trigger Notice Cap, which shall exclusively be used to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap.

(e)    <u>Application of Carve Out Reserves</u>.

(i)    Notwithstanding anything to the contrary in the DIP Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, if the DIP Agent (at the direction of the Required DIP Lenders) sweeps or forecloses on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors, the DIP Agent shall

promptly deposit any cash swept or foreclosed upon after delivery of the Carve Out Trigger Notice (including cash received as a result of the sale or other disposition of assets) into the Funded Reserve Account until it is fully funded.

(ii)    Notwithstanding anything to the contrary in this Interim Order, (i) the failure of the Funded Reserve Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out and (ii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Funded Reserve Account, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Documents or the Prepetition Secured Facilities, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations, other than the liens and interests of Wells Fargo in the P-Card Carve-Out Collateral.

(f)    No Direct Obligation To Pay Allowed Professional Fees.  The DIP Agent and the DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lenders, in any way, to directly pay compensation to, or to reimburse expenses of, any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)    Payment of Allowed Professional Fees Prior to the Carve Out Trigger Notice Date.  Prior to the Carve Out Trigger Notice Date, the Debtors shall be permitted to pay

50

compensation and reimbursement of all Allowed Professional Fees of Estate Professionals, as the same may be due and payable, and such payments shall not reduce the Carve Out.  Upon the receipt of the Carve Out Trigger Notice, the right of the Debtors to pay professional fees outside the Carve Out shall terminate and the Debtors shall provide immediate notice to all Estate Professional informing them that such notice was delivered and further advising them that the Debtors' ability to pay such Estate Professional is subject to and limited by the Carve Out.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(h)    Payment of Carve Out On or After the Carve Out Trigger Notice Date. Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out from draws or deemed draws under the DIP Facility shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

36.    Limitations on Use of DIP Proceeds, Cash Collateral and Carve Out.  The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with:  (a) preventing, restricting, hindering, delaying, objecting to, contesting, modifying or interfering with any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral in accordance with the Interim Order and the DIP Documents, subject to the Intercreditor Agreement; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent (acting at the direction of the

Required DIP Lenders) other than as permitted in the DIP Documents and this Interim Order; (c) outside the ordinary course of business, using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent (acting at the direction of the Required DIP Lenders); (d) incurring Indebtedness without the prior consent of the DIP Agent (acting at the direction of the Required DIP Lenders), except to the extent permitted under the DIP Credit Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Documents; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents, any so-called "lender liability" claims and causes of action, or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, successors and assigns and the partners, shareholders, controlling persons, directors, officers, employees, agents, trustees, administrators, managers, advisors, attorneys and representatives, solely in their capacities as such; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any rights or interests of any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties granted under this Interim Order or the DIP Documents; or (i) seeking to subordinate, recharacterize,

disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided*, *however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate, incurred solely by a Creditors' Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens or Prepetition Secured Obligations (the "**Investigation Budget**").

37.     <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Estate Professional or shall affect the right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

38.     <u>Effect of Stipulations on Third Parties</u>.

(i)     *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any official committee that may be appointed in these cases, unless, and solely to the extent that, (i) a Creditors' Committee (if any) or any other party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined herein) shall be waived) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Debtors' Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") no later than (1) for a Creditors' Committee (to the

53

extent one is appointed), sixty (60) calendar days from the date of the Creditors' Committee's appointment, or (2) seventy-five (75) calendar days from the entry of the Interim Order for any other party in interest with requisite standing (the "**Challenge Deadline**"), as such applicable date may be extended in writing from time to time by each Prepetition Agent (acting at the direction of the Required Lenders under the Prepetition First Lien Agreement or Prepetition Second Lien Agreement, as applicable) and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided that any trustee appointed or elected in these Chapter 11 Cases prior to the expiration of the Challenge Deadline shall have until the later of (x) the Challenge Deadline or (y) 10 calendar days from the date such trustee is appointed to commence a Challenge proceeding.  If the Creditors' Committee (if any) or any other party in interest files a motion for standing to bring a Challenge by the Challenge Deadline, such Challenge Deadline shall be tolled pending further order of the Court.  For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter timely commenced prior to the Challenge Deadline pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest with the requisite standing on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.  Further, notwithstanding the Challenge Deadline, creditors asserting claims pursuant to the Perishable Agricultural Commodities Act of 1930 or the Packers and Stockyards Act of 1921 shall not be barred from

objecting to any party's attempt to assert claims or liens against assets that constitute the PACA/PASA Trusts.  Further, creditors asserting claims pursuant to the Perishable Agricultural Commodities Act of 1930 or the Packers and Stockyards Act of 1921 are exempt from the provisions of this paragraph and shall not be required to assert a Challenge by the Challenge Deadline but shall not be barred from objecting to any party's attempt to assert claims or liens against assets that constitute the PACA/PASA Trusts.

(ii)    *Binding Effect*.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Debtors' Stipulations shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Debtors' Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above, except to the extent that any of such Debtors' Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment, and only as to plaintiffs or movants that have complied with the terms hereof.  To the extent any such Challenge proceeding is timely and properly commenced, subject to the terms of the Intercreditor Agreement, the Prepetition Agents and any other Prepetition Secured Party shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys'

fees, incurred in defending themselves and the other Prepetition Secured Parties in any such proceeding as adequate protection.  For the avoidance of doubt, if a Challenge is successful as set forth in a final judgment, the Court may fashion any appropriate remedy, including disgorgement.

39.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

40.     Section 506(c) Claims.  Subject to the entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Agent, DIP Lenders, or the Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agent (acting at the direction of the Required DIP Lenders), the Prepetition First Lien Agent (acting at the direction of the Required Lenders) or the Prepetition Second Lien Agent (acting at the direction of the Required Lenders), as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

41.     No Marshaling/Applications of Proceeds.  Subject to the entry of a Final Order, the DIP Agent, DIP Lenders, and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

42.     <u>Section 552(b)</u>.    Subject to the entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

43.     <u>Access to DIP Collateral</u>.    Without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, contained in this Interim Order, the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing, the DIP Agent (acting at the direction of the Required DIP Lenders) may, subject to the applicable notice provisions, if any, in this Interim Order and any separate applicable agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder.    Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded in this paragraph.    For the avoidance of doubt, subject to (and without waiver of) the rights of the DIP Agent and/or DIP Lenders under applicable nonbankruptcy law, the DIP Agent and/or DIP Lenders can only enter upon a leased premises after an Event of Default or the Termination Date in accordance with (i) a separate agreement with the landlord at the applicable leased premises, (ii) consent of the landlord, or (iii) upon entry of an order of this Court obtained by motion of the DIP Agent and/or DIP Lenders, on such notice to the landlord as shall be required by this Court or applicable law.

44.     <u>Limits on Lender Liability</u>.  Subject to the entry of a Final Order, nothing in this Interim Order or in any of the DIP Documents, Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the restructuring efforts and the administration of these Chapter 11 Cases.  Subject to the entry of the Final Order, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C.  §§ 9601 *et seq.*, as amended, or any similar federal or state statute) as a result of or in connection with this Interim Order and the DIP Documents.  Nothing in this Interim Order, the DIP Documents, or the Prepetition Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

45.     <u>Insurance Proceeds and Policies</u>.  Upon the entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders) and the Prepetition Agents (on behalf of the Prepetition Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that constitutes DIP Collateral.

46.    <u>Joint and Several Liability</u>.    Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Borrower Representative and the other Credit Parties shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

47.    <u>Rights Preserved</u>.    Except as provided in this Interim Order and the DIP Documents, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the DIP Agent's, DIP Lenders', and Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, DIP Lenders, or Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Creditors' Committee's (if appointed) or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of

the Final Order and any other position which any party in interest deems appropriate to raise in the Chapter 11 Cases.

48.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, DIP Lenders, or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, or Prepetition Secured Parties.

49.    <u>Binding Effect of Interim Order</u>.  Immediately upon the entry of the Interim Order by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

50.    <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent or the Prepetition First Lien Agent acting at the direction of the Required DIP Lenders or Required Lenders (or, in each case, the requisite lenders otherwise required to effectuate any such waiver,

consent or amendment under Section 12.2 of the DIP Credit Agreement or Section 12.2 of the Prepetition First Lien Agreement, as applicable), respectively, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior in priority to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agent (acting at the direction of the Required DIP Lenders), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; (c) without the prior written consent of the Prepetition First Lien Agent (acting at the direction of the Required Lenders), any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens (other than the DIP Liens); (d) to the extent such consent has not been waived under the Intercreditor Agreement, without the prior written consent of the Prepetition Second Lien Agent (acting at the direction of the Required Lenders), any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Second Liens or Adequate Protection Liens (other than the DIP Liens and the Prepetition First Liens) or any modification, stay, vacatur or amendment to this Interim Order that materially and adversely affects the rights of the Prepetition Second Lien Parties hereunder, or (e) without the prior written consent of the DIP Agent or Prepetition First Lien Agent, as applicable, any modification, stay, vacatur or amendment to this Interim Order affecting the rights, duties or obligations of the DIP Agent or Prepetition First Lien Agent, as applicable.  The Debtors irrevocably waive any right to seek any

amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent or the Prepetition First Lien Agent acting at the direction of the Required DIP Lenders or Required Lenders, respectively, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition First Lien Agent.

51.    Continuing Effect of the Intercreditor Agreement.    The Intercreditor Agreement and any other intercreditor agreement or subordination agreement between and/or among any Prepetition Secured Party, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition Secured Parties (including, by agreement of the Prepetition First Lien Agent and the Prepetition Second Lien Agent (in each case, at the direction of the requisite respective Prepetition Secured Parties) with respect to the Adequate Protection Liens and Adequate Protections Superpriority Claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and modification of the automatic stay, and (iii) shall not be deemed to be amended, altered or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth herein.  The Debtors, the DIP Agent, DIP Lenders, and Prepetition Secured Parties have each agreed that they shall be bound by, and in all respects the DIP Facility and DIP Collateral shall be governed by, and be subject to, all the terms, provisions and restrictions of the Intercreditor Agreement, except as may be expressly modified by this Interim Order.  The DIP Facility is a First Lien Loan Agreement as that term is used in the Intercreditor Agreement, and any repayment of the Prepetition First Lien Obligations pursuant to this Interim Order shall not be

deemed to constitute a "discharge" of Prepetition First Lien Obligations for purposes of the Intercreditor Agreement.

52.     <u>Interim Order Controls</u>.   In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

53.     <u>Discharge</u>.   The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash and all commitments have been terminated in writing, on or before the effective date of such confirmed plan of reorganization or the DIP Agent (acting at the direction of the Required DIP Lenders) and/or the Prepetition Agent (acting at the direction of the Required Lenders), as applicable, has otherwise agreed in writing.

54.     <u>Survival</u>.   The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Agent, DIP Lenders, and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this

Interim Order until:  (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash and all commitments have been terminated; and (ii) in respect of the Prepetition First Lien Agreement, all of the Prepetition First Lien Obligations pursuant to the Prepetition First Lien Documents and this Interim Order have been indefeasibly paid in full in cash.  The terms and provisions concerning the indemnification of the DIP Agent and DIP Lenders shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

56. 55.     <u>Satisfaction of DIP Claims.</u>    Subject to entry of the Final Order, in connection with any allocation of the Debtors' property for purposes of determining the value the Prepetition Secured Parties' interests in the Prepetition Collateral after the Debtors have accounted for, and satisfied the DIP Claims (in connection with confirmation of a plan of reorganization or otherwise), the DIP Claims shall be satisfied from all present and after acquired property of the Debtors (including the proceeds, product, offspring, profits or value thereof), wherever located, not subject to a lien or security interest on the Petition Date prior to the use of the Prepetition Collateral to satisfy such DIP Claims.

56.     <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final, approval of the DIP Facility is scheduled for **April 3, 2020, at 10:00 a.m. (Eastern Standard Time)** before the Honorable United States Bankruptcy Judge Brendan Linehan Shannon, at the United States Bankruptcy Court for the District of Delaware.  On or before March 6, 2020, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"),

together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Creditors' Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **March 23, 2020 at 4:00 p.m. (Eastern Standard Time)** which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman & 525 W Monroe St, Chicago, IL 60661, Attn: Peter A. Siddiqui; (ii) counsels to the DIP Agent and Prepetition First Lien Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, Attn: W. Austin Jowers and Michael R. Handler and Hunton Andrews Kurth LLP, 600 Peachtree St. NE, Suite 4100, Atlanta, GA 30308, Attn: John R. Schneider; (iii) counsel to the Prepetition Second Lien Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178, Attn: Jennifer Feldsher and One Federal Street, Boston, MA 02110, Attn: Sula R. Fiszman; and (iv) the Office of the U.S. Trustee for region 3, 844 King Street, Suite 3307, Wilmington, DE 19801, Attn: Linda Casey.

57.    <u>Nunc Pro Tunc Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the Petition Date immediately upon execution thereof.

58.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

59.     No later than two (2) business days after the date of this Interim Order, the Debtors shall serve a copy of the Interim Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.

**Dated: March 5th, 2020 Wilmington, Delaware**

**BRENDAN L. SHANNON UNITED STATES BANKRUPTCY JUDGE**