## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CRAFTWORKS PARENT, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10475 (BLS)<br><br>(Jointly Administered)<br><br>Re: Docket No. 336 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
OCI RE COOL SPRINGS PARTNERS, LLC IN ITS CAPACITY AS LANDLORD,
TO DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING AND APPROVING
SEMI-PRIVATE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND
APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND
(III) GRANTING RELATED RELIEF**

OCI RE Cool Springs Partners, LLC in its capacity as landlord ("Landlord"), submits this

limited objection ("Objection") to the *Debtors' Motion for an Order (I) Authorizing and Approving*

*Semi-Private Sale of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other*

*Interests; (II) Authorizing and Approving Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases Related Thereto; and (III) Granting Related Relief*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Big River Breweries, Inc. (6292); Brew Moon Colorado, Inc. (5001); Chophouse License, LLC (2340); Craft Brewery Holding, Inc. (1228); CraftWorks Holdings, LLC (7163); CraftWorks Intermediate Co, LLC (9810); CraftWorks Parent, LLC (3345); CraftWorks Restaurants & Breweries Group, Inc. (4820); CraftWorks Restaurants & Breweries, Inc. (2504); CraftWorks Restaurants & Breweries, LLC (0676); GB Acquisition, Inc. (5175); GB Franchise, LLC (7716); GB Kansas, LLC (0924); GB Maryland, Inc. (6439); GB Parent, Inc. (1281); GBBR Texas, Inc. (9904); Gordon Biersch Brewery Restaurant Group, Inc. (8023); Harbor East Brewery, LLC (7759); Logan's Restaurants, Inc. (9987); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Kansas, Inc. (8716); Logan's Roadhouse of Texas, Inc. (2372); LRI Holdings, Inc. (4571); Old Chicago Franchising LLC (7249); Old Chicago of Colorado, Inc. (4857); Old Chicago of Kansas, Inc. (0606); Old Chicago Oregon, Inc. (5083); Old Chicago Parker Crossing, Inc. (9218); Old Chicago Taproom, LLC (5838); Old Chicago Westminster, Inc. (5759); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); Rock Bottom Arizona, Inc. (4848); Rock Bottom License, LLC (9033); Rock Bottom of Minneapolis, Inc. (5762); Wadsworth Old Chicago, Inc. (4849); Walnut Brewery, Inc. (7405). The Debtors' mailing address is 2981 Sidco Drive, Nashville, TN 37204.

("Sale/Assumption Motion") [Docket. No. 336].[2] In support of this Objection, the Landlord respectfully represent as follows:

## BACKGROUND

1.      Craftworks Parent, LLC and its co-debtors (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code[3] on March 3, 2020 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.      Landlord and debtor Wadsworth Old Chicago, Inc. ("Lessee") are parties to that certain nonresidential real property ground lease dated as of January 31, 2012 (along with all amendments thereto, the "Lease"), as assigned to and assumed by Lessee pursuant to the Assignment and Assumption of Ground Lease and Consent dated August 15, 2015 ("Assignment") are parties to a for certain space, which includes retail space located at 440 Cool Springs Blvd., Franklin, TN 37067 ("Premises").

3.      On May 4, 2020, the Debtors filed the Sale/Assumption Motion, seeking this Court's approval of, among other things, procedures for assuming and assigning certain nonresidential real property leases to DBFLF CFTWE Holdings, L.P. ("Proposed Purchaser").

4.      On May 6, 2020, the Debtors filed the *Notice of Cure Amounts and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* ("Assumption Notice") [Docket No. 348] including the Lease as one of several to be assumed and assigned, and providing

---

[2]  Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale/Assumption Motion and accompanying documents.

[3]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

a proposed $0.00 cure amount to assume and assign the Lease.  *See* Assumption Notice, Ex. A.[4]

## LIMITED OBJECTION[5]

### A.    Adequate Assurance of Future Performance

5.      The Debtors have failed to demonstrate that the proposed assignment of the Lease pursuant to the Sale/Assumption Motion and Assumption Notice complies with Sections 365(b)(1)(C) and 365(f), which require that the Debtor and Proposed Purchaser demonstrate "adequate assurance of future performance."

6.      Section 365(b)(1)(C) requires, as a condition to assumption of a lease, that the Debtor provide "adequate assurance of future performance" under the lease.

7.      Section 365(f)(2) states, in relevant part:

> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
>
> > (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

7.      Section 365(b)(3) provides a definition for "adequate assurance of future performance":

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

---

[4] Exhibit A to the Assumption Notice incorrectly lists the effective date of the Lease as November 12, 2012, rather than January 31, 2012.

[5] Although the assumption and assignment of leases is being effected "in connection with" a sale motion (Sale/Assumption Motion ¶ 58), the proposed assumption and assignment of the Lease is subject to the requirements of Section 365. *See In re Access Beyond Techs., Inc.*, 237 B.R. 32, 47 (Bankr. D. Del. 1999) ("A debtor cannot avoid the requirements of section 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.").

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

8.      Courts determine what constitutes "adequate assurance of future performance" on a case-by-case basis. *See, e.g.*, *Cinicola v. Scharffenberger*, 248 F.3d 110, 120, n.10 (3d Cir. 2001) ("The phrase 'adequate assurance of future performance' . . . is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." (citation omitted)); *see also Tex. Health Enters. v. Lytle Nursing Home (In re Tex. Health Enters., Inc.)*, 72 F. App'x 122, 126 (5th Cir. 2003) (stating that determinations of adequate assurance are "extremely fact-specific").

9.      The Debtor and Proposed Purchaser bear the burden regarding adequate assurance of future performance, and courts have found even detailed financial statements to be insufficient if they are unaudited. *See, e.g.*, *In re RS Legacy Corp.*, Case No. 15-10197 (BLS), 2015 Bankr. LEXIS 2206, at *6 (Bankr. D. Del. June 25, 2015) ("[B]ased on the facts and circumstances of this case, unaudited financials and projections are insufficient to satisfy the statutory requirement to provide adequate assurance of future performance under the Lease."). "To determine whether a

landlord is adequately assured, courts look to a non-exclusive list of factors, including the debtor's payment history, the extent and history of defaults, presence of a guarantee and/or a security deposit, evidence of profitability, a plan with earmarked funds exclusively for the landlord, the general outlook in the debtor's industry, and whether the lease is at or below the prevailing market rate . . . ." *Androse Assocs. of Allaire, LLC v. The Great Atl. & Pac. Tea Co., Inc. (In re The Great Atl. & Pac. Tea Co., Inc.)*, 472 B.R. 666, 675 (Bankr. S.D.N.Y. 2012) (citing *In re M. Fine Lumber Co. Inc.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008)); *see also In re Tex. Health Enters., Inc.*, 72 F. App'x at 122 (stating that courts have assessed the following factors in determining adequate assurance of future performance: (1) whether financial data indicates an ability to generate an income stream sufficient to meet the obligations; (2) the general economic outlook in the industry; (3) the presence of a guarantee).

10.     The Debtors and the Proposed Purchaser have failed to satisfy the "adequate assurance of future performance" component under Section 365(f)(2).  The Debtors and Proposed Purchaser have not provided an adequate assurance package to the Landlord.  The entirety of the adequate assurance provided is a single statement in the Sale/Assumption Motion that: "The financial backing behind the Proposed Purchaser cannot credibly be challenged and, in any event, the Proposed Purchaser currently intends to support the restart of business operations as promptly as reasonably practical under the circumstances."  Sale/Assumption Motion ¶ 59.

11.     The statement does not adequately demonstrate, as required under Section 365(b)(3), that: (a) the financial condition and operating performance of the Proposed Purchaser will be similar to the financial condition of the Debtors at the time the Lease was entered into; or that (c) the assignment of the Lease will be subject to all provisions thereof, and will not breach any such provision contained in any other agreement relating to the shopping center.

12.     Nothing in the Proposed Purchaser's statement provides a feasible business plan supporting the ability of the Proposed Purchaser to meet the Lease's rent obligations, a detailed history of its operating performance, audited reports about the current financial condition of the Proposed Purchaser, or an examination of the current outlook in the Debtors' industry.  The Proposed Purchaser has not met its burden to show, as required under Section 365(b)(3), that (i) its financial condition is similar to that of the Debtor at the time it became Lessee under the Lease, or (ii) that that it will meet its obligations under the Lease.

13.     Finally, under Section 365(b)(1)(A), a nonmonetary default arising from a failure to operate in accordance with a nonresidential property lease can be cured by performance "**at** and after the time of assumption in accordance with such lease . . . ."  11 U.S.C. § 365(b)(1)(A) (emphasis added).  Accordingly, the Proposed Purchaser should not be permitted to assume the Lease unless it can demonstrate that it is acting in compliance with all of the Lease's nonmonetary obligations at the time of assumption.

14.     Based on the above-stated facts, the Debtors and Proposed Purchaser have failed to meet their burden, and the unsupported statement provided in the Sale/Assumption Motion is insufficient to satisfy the statutory requirement to provide adequate assurance of future performance under the Lease.

**B.      Cure of Defaults**

15.     In the event that the Debtors and Proposed Purchaser are able to demonstrate "adequate assurance of future performance," all defaults under the Lease must be cured as a condition to assumption and assignment.

16.     Sections 365(b)(1)(A) and (B) of the Bankruptcy Code require a debtor to "cure" defaults and "compensate" the non-debtor party to an executory contract as a condition to the

debtor's assumption of an executory contract. Currently, the Debtors list the cure amount due to the Landlord as $0.00. *See* Assumption Notice, Ex. A. The past-due obligations owing to the Landlord under the Lease total no less than $25,228.23. A chart itemizing the amounts owed under the Lease is attached hereto as **Exhibit A**. Accordingly, the Landlord objects to the inaccurate cure amount listed in the Assumption Notice.

17.     Additionally, the Landlord asserts this objection to preserve its entitlement to (i) cure amounts related to accrued obligations under the Lease that do not fall due prior to the effective date of assumption, (ii) cure of all non-monetary defaults as of the effective date of assumption, and (iii) amend or assert additional cure amounts or other pecuniary losses, including attorneys' fees and expenses, that may be due under the Lease.

### C.     The Lease Must be Assumed and Assigned in its Entirety

18.     To the extent that the Debtors and Proposed Purchaser are able to satisfy the other requirements for assumption and assignment, the Lease must be assumed and assigned in its entirety under its existing terms and without modification.

19.     Landlord does not consent to any modifications to the Lease and therefore it must be assumed and assigned in its entirety and without modification. It is well settled that, where a debtor-in-possession elects to assume an executory contract under Bankruptcy Code section 365, it assumes the contract *cum onere*; that is, a debtor may only assume the entire contract, with all of the benefits, burdens and obligations attendant thereto. *See American Flint Glass Workers v. Anchor Resolution Corp.*, 197 F.3d 76, 81 (3d Cir. 1999) ("[A]n assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as well as to acquire all rights created by the contract."); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984) (*citing In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951)) ("Should

the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*, and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate, 11 U.S.C. § 503(b)(1)(A).").

## RESERVATION OF RIGHTS

20.    The Landlord reserves its rights with respect to all obligations included in the Lease, monetary and non-monetary.  Further, the Landlord specifically joins in any objections filed in opposition to the Sale/Assumption Motion to the extent such objections are not inconsistent with the positions set forth herein.

## CONCLUSION

For all of the foregoing reasons, Landlord requests that this Court enter an order sustaining this Objection and granting such other, further, and different relief as this Court deems just and proper.

Dated:  May 15, 2020                        BURR & FORMAN LLP

                                            /s/ *J. Cory Falgowski*
                                            J. Cory Falgowski (DE No. 4546)
                                            1201 N. Market Street, Suite 1407
                                            Wilmington, DE 19801
                                            Telephone: (302) 830-2312
                                            Email:  jfalgowski@burr.com

                                            *Counsel for OCI RE Cool Springs Partners,*
                                            *LLC as Landlord*