# EXHIBIT A

# WEST END TITLE & ESCROW
## A LIMITED LIABILITY COMPANY

Paul F. Soper
Tricia Ball, Paralegal

psoper@soperoakley.com
tball@soperoakley.com

ONE BURTON HILLS BOULEVARD
SUITE 330
NASHVILLE, TN 37215

PHONE (615) 467-6557
FAX (615) 320-7208

Direct Dial of Sender: 615-324-4039

### TELECOPIER TRANSMITTAL

### TELECOPIER NUMBER: (615) 320-7208

THE INFORMATION CONTAINED IN THIS FACSIMILE IS PRIVILEGED AND CONFIDENTIAL
INFORMATION INTENDED FOR THE USE OF THE ADDRESSEE LISTED BELOW AND NO ONE
ELSE.    IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT
RESPONSIBLE TO DELIVER THIS MESSAGE TO THE INTENDED RECIPIENT, PLEASE DO NOT
USE THIS TRANSMISSION IN ANY WAY. IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AT (615) 467-6557 AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL
SERVICE. WE WILL REIMBURSE YOU FOR POSTAGE.

TO:  David Marks

TELECOPIER NO:  530-466-5574

FROM:  Tricia Ball

DATE:  2/6/06

We are beginning to send _28_ pages (including cover memo).  If transmission is interrupted
or is of poor quality, please call (615) 467-6557.

_____An original of this fax will be mailed.
_____An original of this fax will not be mailed.

If you have questions regarding content of transmission, please call 467-6557 and ask for the
person referenced above.

Message:

_____
_____
_____

G:\SO Firm Docs\West End Title & Escrow\faxcvrsheettitle.doc

# LEASE

## BY AND BETWEEN

### DE MONTBRUN - PARK HOLDINGS, LLC
a Tennessee limited liability company

as Landlord

and

### GORDON BIERSCH BREWERY RESTAURANT GROUP, INC.
a Tennessee corporation

as Tenant

### DATED September 19, 2002

N JAG 386541 v8
013694-0014 09/16/2002

## Table of Contents

Page

ARTICLE I.      DEFINITIONS AND ENUMERATION OF EXHIBITS ........................1
ARTICLE II.     DELIVERY AND ACCEPTANCE OF PREMISES ..................3
ARTICLE III.    RENT ......................................................3
ARTICLE IV.     USE AND CARE OF PREMISES ................................4
ARTICLE V.      MAINTENANCE AND REPAIR OF PREMISES, ALTERATIONS,
                AND LANDLORD'S RIGHT OF ACCESS .........................5
ARTICLE VI.     SIGNS AND ROOF..........................................7
ARTICLE VII.    UTILITIES...............................................8
ARTICLE VIII.   INDEMNITY ..............................................8
ARTICLE IX.     INSURANCE...............................................8
ARTICLE X.      DAMAGE BY CASUALTY .....................................9
ARTICLE XI.     EMINENT DOMAIN ........................................10
ARTICLE XII.    ASSIGNMENT AND SUBLETTING .............................11
ARTICLE XIII.   TAXES..................................................14
ARTICLE XIV.    DEFAULTS AND REMEDIES .................................14
ARTICLE XV.     HOLDING OVER ..........................................16
ARTICLE XVI.    SUBORDINATION..........................................16
ARTICLE XVII.   NOTICES................................................17
ARTICLE XVIII.  OPTION TO EXTEND TERM .................................17
ARTICLE XIX.    ENVIRONMENTAL COMPLIANCE AND INDEMNITY.................18
ARTICLE XX.     MISCELLANEOUS .........................................19

EXHIBIT "A"     Premises Description ...................................1
EXHIBIT "B"     Legal Description Of Land ..............................1

N JAG 386541 v8
013694-0014 09/16/2002

i

## LEASE

**THIS LEASE** ("Lease") is made by and between **de MONTBRUN - PARK HOLDINGS, LLC,** a Tennessee limited liability company ("Landlord") and **GORDON BIERSCH BREWERY RESTAURANT GROUP, INC.,** a Tennessee corporation, ("Tenant") dated as of September 19, 2002 (the "Commencement Date").

## WITNESETH:

In consideration of the obligation of Tenant to pay rent as herein provided and in consideration of the other terms, covenants, and conditions hereof, Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, the Premises as described in Section 1.1 of this Lease.

TO HAVE AND TO HOLD said Premises for the Lease Term described in Section 1.1 of this Lease, subject to the terms and provisions set forth herein.

### ARTICLE I.

### DEFINITIONS AND ENUMERATION OF EXHIBITS

1.1   In addition to other terms which are elsewhere defined in this Lease, the following terms when used in this Lease with the first letter of each word capitalized shall have the meanings set forth in this section, and only such meanings, unless such meanings are expressly limited or expanded elsewhere herein.

(a)   Base Rent:

| Lease Year | Annual Rent | Monthly Rent |
|---|---|---|
| 1 - 5 | $220,000.00 | $18,333.33 |
| 6 - 10 | $233,200.00 | $19,433.33 |
| 11 - 15 (1st option) | $247,192.00 | $20,599.33 |
| 16 - 20 (2nd option) | $262,020.00 | $21,835.00 |

(b)   Building: That certain building containing approximately 50,000 gross square feet located on the Land and having an address of 111 Broadway, Nashville, Davidson County, Tennessee.

(c)   Commencement Date: shall mean the date of this Lease, as set forth in the first paragraph of this Lease.

(d)   Common Area: shall mean all parking areas, walkways, traffic corridors, approaches, exits, entrances, and other areas shared in common with other tenants of the Building. Tenant is granted a license in common with all other tenants of the Building to use the Common Areas as they may now or hereafter exist. Landlord may establish reasonable rules and

1

N JAG 386541 v8
013694-0014 09/16/2002

regulations concerning the use of the Common Areas, which shall be uniformly enforced among all tenants of the Building.

(e)     Land: That certain parcel of land more particularly described on the attached Exhibit "B".

(f)     Landlord's Mailing Address:

de Montbrun - Park Holdings, LLC
P. O. Box 867
Cookeville, TN 38503

(g)     Lease Term or Terms: The period of time commencing with the Rent Commencement Date and ending at 6:00 p.m. on the day prior to the tenth (10th) anniversary of the Rent Commencement Date, subject to any extensions thereof pursuant to Article XVIII of this Lease.

(h)     Lease Year: In the case of the first Lease Year, that period beginning on the Commencement Date and ending twelve (12) months thereafter; thereafter, Lease Year shall mean each successive twelve (12) month period following the expiration of the first Lease Year.

(i)     Permitted Use: The Premises may be used only for the purposes of operation of a brewery pub and restaurant, as well as other uses consistent therewith, including without limitation, any other uses being made of the Premises on the Commencement Date; provided, however, that the Premises or any part thereof may not be operated as a brewery without also operating the Premises as a pub or restaurant.

(j)     Premises: The basement and first floor levels of the Building containing approximately 18,498 square feet together with a right of first refusal for an outdoor seating area along Basin Alley, as more particularly shown by hatching on the floor plan diagrams attached as Exhibit "A" and incorporated herein by reference.

(k)     Real Estate Taxes: Shall mean all ad valorem, real property taxes, charges and assessments for, to and of the Real Property conveyed to Landlord by the previous owner, which are levied, assessed or imposed during any calendar year of the Lease Term by any governmental authority upon the Real Property with existing improvements along with future improvements as they become a part of the Real Property (excluding, however, federal or state income tax, franchise, estate or inheritance tax or transfer tax imposed by reason of sale of the Building). The intent of this DEFINITION is that personal property required for the operation of the business occupying the Property shall not be included in the Landlord's value basis for taxation, but rather the Tenant's specific personal property value basis and shall be taxed directly to the Tenant.

(l)     Rent: Shall mean Base Rent.

2

N JAG 386541 v8
013694-0014 09/19/2002

(m)     Tenant's Mailing Address:

Gordon Biersch Brewery Restaurant Group, Inc.
100 East 10th Street, Suite 600
Chattanooga, TN 37402
Attention: Allen Corey, President

with copies to the Premises and to:

Laurence M. Papel, Esq.
Baker, Donelson, Bearman & Caldwell, P.C.
211 Commerce Street, Suite 1000
Nashville, TN 37201

(n)     Tenant's Proportionate Share: Shall mean the ratio of the rentable area in the Premises together with the ratio of the rentable area in the Common Access Area to the total amount of rentable area in the Building, and such percentage is acknowledged to be forty percent (40%). The Common Access Area shall mean the vertical access to and from the Premises by means of elevator and stairs.

1.2     The exhibits enumerated in this section and attached to this Lease are incorporated in this Lease by this reference and are to be construed as part of this Lease.

Exhibit A:     Description of Premises
Exhibit B:     Description of Land

## ARTICLE II.

## DELIVERY AND ACCEPTANCE OF PREMISES

2.1     This Lease is executed by the parties hereto in connection with a sale/leaseback transaction. Tenant is currently in possession of the Premises and agrees that it accepts the same "as is, where is" without any representations or warranties from Landlord as to the physical condition of the Premises whatsoever.

## ARTICLE III.

## RENT

3.1     Each year of the Base Term or any extensions, Tenant shall pay to Landlord the Base Rent in twelve (12) monthly installments without demand, abatement, deduction or setoff of any nature, at Landlord's Mailing Address as noted in Article XVII hereof, or at such other place as Landlord shall designate in writing.

3.2     Tenant shall pay to Landlord the Base Rent in twelve (12) equal monthly installments without demand, abatement, deduction, or setoff of any nature at Landlord's Mailing Address and in the manner set forth in Article 17 hereof or such other place as Landlord shall designate in writing. The first such monthly installment shall be due and payable on or before

3

the Commencement Date, and subsequent installments shall be due and payable on or before the first day of each succeeding calendar month during the Term. Any such installment shall be prorated on a daily basis for any month in which this Lease is not in effect for the entire month.

3.3    In the event of the failure of Tenant to pay any Base Rent, additional Rent, or any other amounts due hereunder within ten (10) days of the date such rent is due, Tenant shall be liable to Landlord for a late charge equal to five percent (5%) of the amount of the late payment in order to reimburse Landlord for Landlord's additional administrative costs as a result of such breach. In the event such amounts due hereunder are not paid within fifteen (15) days of the due date, interest will, subsequent to the expiration of such fifteen (15) day period, accrue on such unpaid amounts, at the prime rate published in The Wall Street Journal, plus four percent (4%), said rate to be adjusted on the date the prime rate changes, but not to exceed the maximum lawful rate of interest chargeable under the laws of the State of Tennessee (the "Default Rate"), from the date due until paid. Imposition of such late charge shall not abrogate or limit any rights or remedies which Landlord may otherwise have hereunder.

## ARTICLE IV.

## USE AND CARE OF PREMISES

4.1    Tenant shall use and occupy the Premises for the Permitted Use and for no other use, without the prior written consent of Landlord which shall not be unreasonably withheld, conditioned or delayed provided that this provision shall not be construed as a covenant to continuously operate in the Premises. Provided Tenant does continuously operate a restaurant in the Premises consistent with the Permitted Use, Tenant shall have the exclusive right to operate a restaurant in the Building. If, however, Tenant ceases doing business in the Premises for a period in excess of ninety (90) consecutive days, for any reason other than restoration due to casualty or condemnation, Landlord may, at its sole discretion but subject to the provisions of Section 12.2 of this Lease, (i) terminate this Lease, or (ii) assign or sublease the Premises on behalf of Tenant. In the event that Landlord assigns or sublets the Premises on behalf of Tenant under this Section 4.1, Tenant shall have the right to approve in advance any assignee or subtenant proposed by Landlord, as the case may be, which approval will not be unreasonably withheld, conditioned or delayed by Tenant. In the event that Landlord terminates this Lease under this Section 4.1, Tenant's cessation of business shall not be deemed a default under this Lease.

4.2    Tenant shall comply with all laws and ordinances and all valid rules and regulations of all federal, state, and local agencies and authorities having jurisdiction over the Premises. Landlord shall comply with all laws and ordinances and all valid rules and regulations of all federal, state, and local agencies having authorities having application to the Building, but excluding the Premises.

4

N JAG 386541 v8
013694-0014 09/16/2002

## ARTICLE V.

## MAINTENANCE AND REPAIR OF PREMISES, ALTERATIONS, AND LANDLORD'S RIGHT OF ACCESS

5.1    Tenant shall, at its sole cost and expense, keep the Premises in a safe, sightly, and serviceable condition and make all needed maintenance, repairs, and replacements for the proper operation of Tenant's business within the Premises, including, but not limited to, all maintenance, repairs, and replacements to (i) the heating, ventilating, and air conditioning systems exclusively serving the Premises; (ii) the exterior and interior portion of all doors, door hardware, windows, window assemblies, window frames, plate glass, door closures, door frames and store fronts; (iii) all plumbing and sewage facilities within the Premises, including free flow up to the connection to the main sewer line; (iv) all fixtures within the Premises; (v) all electrical systems within the Premises; (vi) all sprinkler systems serving the Premises; and (vii) all interior walls, floors, and ceilings. If at any time and from time to time during the Term and any extensions and renewals thereof, Tenant shall fail to make any maintenance, repairs, or replacements in and to the Premises as required in this Lease, subject to the notice and cure periods specified at Section 14.1 (except in the event of emergencies), Landlord shall have the right, but not the obligation, to enter the Premises and to make such maintenance, repairs, and replacements for and on behalf of Tenant, and all sums reasonably expended by Landlord for such maintenance, repairs, and replacements shall be deemed to be additional rent hereunder and shall be payable to Landlord upon demand. At the termination of this Lease, Tenant shall surrender the Premises in good condition, reasonable wear and tear and loss by fire or other casualty alone excepted.

5.2    Landlord shall, at its sole cost and expense, maintain in good order, repair, and replace as necessary, the (i) roof, exterior walls and structural components of the Building, (ii) all Common Areas, and (iii) and any plumbing, electrical, and mechanical systems serving the Building, to the extent such maintenance is not the responsibility of Tenant pursuant to Section 5.1. If at any time and from time to time during the Term and any extensions or renewals thereof, Landlord shall fail to perform any maintenance, repairs, or replacements required under the terms of this Lease, Tenant shall notify Landlord in writing of its failure to so maintain, repair, or replace and Landlord shall have thirty (30) days thereafter, except in the case of circumstances which would be judged by a prudent person to be emergencies, to effect such maintenance, repairs, or replacements plus such additional time as is reasonably necessary in the event Landlord commences such work within thirty (30) of receipt of Tenant's notice. In the event Landlord fails to make such maintenance, repairs, or replacements as prescribed above, Tenant may shall have the right, but not the obligation, to make such maintenance, repairs, or *replacements for and on behalf of Landlord and shall be entitled to recover the reasonable cost* thereof from Landlord.

5.3    Tenant may make any alterations, additions, improvements or replacements (collectively, the "Alterations") to the Premises without the prior written consent of Landlord, provided such Alterations (a) cost less than $150,000 to construct, (b) are made to the interior of the Premises, (c) do not adversely affect the structural integrity or exterior of the Premises, and (d) do not adversely affect the electrical, heating, or plumbing systems serving the Premises; (e) do not materially and adversely impact the Common Areas, structural integrity, HVAC or other systems of the Building. Otherwise, any Alterations to the Premises not meeting the

5

N JAG 386541 v8
013694 0014 09/16/2002

requirements of the foregoing sentence shall require the written consent of Landlord, which shall not be unreasonably withheld. All Alterations made in and to the Premises, including all light fixtures, floor covering, and all other trade fixtures and equipment, shall be deemed the property of Tenant during the term hereof; provided that any Alterations or improvements which are permanently installed in the Premises shall remain in and be surrendered with the Premises and shall become the property of Landlord at the expiration or sooner termination of this Lease. So long as Tenant is not in default hereunder, Tenant shall have the right to remove its trade fixtures and restaurant/brewery equipment from the Premises, provided that Tenant shall repair and restore any damage to the Premises caused or occasioned by such removal.    All repairs, alterations, additions and improvements done by Tenant within the Premises shall be performed in a good and workmanlike manner and in compliance with all governmental requirements.

    5.4    Landlord shall have the right, but not the duty, to enter upon the Premises upon reasonable notice for the purpose of inspecting the same, or of making repairs to the Premises, or of making repairs, alterations, or additions to adjacent property, or of showing the Premises to lenders or to prospective purchasers or tenants.

    5.5    Tenant shall not suffer or permit any materialmen's, mechanics', artisans' or other liens (or any preliminary notice thereof) to be filed or placed or exist against the land or building of which the Premises are a part, or Tenant's interest in the Premises, by reason of work, services, or materials supplied or claimed to have been supplied to Tenant or anyone holding the Premises or any part thereof through or under Tenant. If any such notice or lien should, at any time, be filed, Tenant shall cause the same to be discharged of record or bonded off within fifteen (15) days after the date of filing the same. If Tenant shall fail to discharge or bond such lien within such period, then, in addition to any other right or remedy of Landlord, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such notice or lien by a deposit in court or by posting a bond. Any amount paid by Landlord for any of the aforesaid purposes, or for the satisfaction of any other lien not caused by Landlord, and all reasonable expenses of Landlord in defending any such action or in procuring the discharge of such notice or lien, shall be deemed additional rent hereunder and shall be repaid by Tenant to Landlord on demand. Any breach(es) of this responsibility to discharge or bond such lien or make payment upon a demand on the part of Tenant shall result in Default of this Lease and be subject to the remedies found in Article XIV.

    5.6    Landlord shall have the right to place upon the store front of the Premises a "for lease" or "for rent" sign at any time within the period of one hundred eighty (180) days prior to the expiration of the Term of this Lease, unless Tenant exercises any renewal or extension option granted herein.

    5.7    Landlord agrees that any Alterations Landlord may construct to the Building in connection with any development of the remainder of the Building shall be conducted in such a manner so as not to disrupt Tenant's business. In addition, Landlord shall be responsible for payment of any costs Tenant incurs (a) from any repairs, remodeling or other work to the Premises that Tenant is required, under applicable fire, safety or other local, state or federal codes, laws or regulations, to perform as a direct result of Landlord's Alterations to the remainder of the Building, or (b) from any other work Tenant undertakes in or about the Premises at Landlord's request to accommodate Landlord's development of the Building, excepting work

6

N JAG 386541 v8
013694-0014 09/16/2002

specifically required of the Tenant, within its Premises, to accommodate and benefit from the use of an elevator addition required by the Landlord to develop the second and third floors of the Building, in which case the cost (to the Tenant) of the required work will not exceed $50,000.00. Planned costs in excess of that amount will be borne by the Landlord according to a separate agreement not included herein. To clarify Tenant's obligation to pay up to $50,000.00, such obligation shall only apply if Tenant requests access to the elevator at its Premises but not if such access is the result of a governmental entity or insurance requirement.

5.8    Tenant acknowledges that Landlord may at any time during the term of the Lease submit the Land, the Building and the Premises to a horizontal property regime pursuant to the provisions of The Horizontal Property Act, Tennessee Code Annotated, § 66-27-101, et. seq. Tenant hereby consents to Landlord's submitting the Land, Building, and the Premises to such a regime, provided that this Lease shall continue in full force and effect, the conversion of the Premises into one or more unit(s) under such regime will not increase the cost to Tenant under this Lease, and will not adversely affect Tenant's operation of its business in the Premises. Notwithstanding the foregoing, the rights of the Landlord under this Section 5.8 shall be subject to the reasonable consent of any Registered Mortgagee, as hereinafter defined, which reasonableness shall be determined by the lack of any impairment or effectiveness of any Leasehold Mortgage, as hereinafter defined.

## ARTICLE VI.

## SIGNS AND ROOF

6.1    Subject to Landlord's approval as to design and placement (which shall not be unreasonably withheld, conditioned or delayed) and required governmental approvals, Tenant shall be entitled to use the exterior of the Building for signage purposes, including, but not limited to, signs on or attached to the Building. Notwithstanding the foregoing, Landlord hereby approves any signs located on the Building or in the Premises as of the Commencement Date.

6.2    Tenant may continue to maintain upon the roof or elsewhere on the Building any equipment, satellite dish(es), signs, antenna, displays, and other objects that are installed on the roof or elsewhere on the Building as of the date of this Lease, and shall be entitled to install replacement or upgraded equipment of the same kind and character. Any damage caused to the roof of the Building by repair/service personnel contracted by Tenant will be the responsibility of Tenant. In the event that Landlord desires to further develop such areas of the Building (including the roof) on which the aforementioned satellite dish(es), signs, antenna, displays and other objects are located, Landlord shall have the right to require Tenant to relocate such object(s) to such location in or on the Building as Landlord may designate, in its sole discretion, and Landlord shall promptly reimburse Tenant for the costs directly incurred by Tenant as a result of such removal.

7

N JAG 386541 v8
013694-0014 09/16/2002

## ARTICLE VII.

### UTILITIES

7.1     Tenant agrees to contract directly with the applicable public utility for it to supply electricity, water, sewer, telephone, gas, and any other utility necessary or convenient for the operation of Tenant's business. Tenant shall promptly pay all charges for electricity, water, sewer, telephone, gas, and any other such utilities furnished to the Premises.

## ARTICLE VIII.

### INDEMNITY

8.1     Tenant shall indemnify and hold Landlord harmless from and against all costs, damages, claims, liabilities and expenses (including attorneys' fees) suffered by or claimed against Landlord, directly or indirectly, based on, arising out of or resulting from (i) use and occupancy of the Premises by Tenant, (ii) repair or maintenance of the Premises which are the obligations of Tenant, (iii) any act or omission by Tenant or Tenant's employees, agents, assignees, contractors, licensees or invitees, or (iv) any breach or default in the performance or observance of Tenant's covenants or obligations under this Lease, subject to applicable cure periods.

8.2     Landlord shall indemnify and hold Tenant harmless from and against all costs, damages, claims, liabilities and expenses (including attorneys' fees) suffered by or claimed against Tenant, directly or indirectly, based on, arising out of or resulting from (i) repair or maintenance of the Premises or the Building which are the obligations of Landlord, (ii) any act or omission by Landlord or Landlord's employees, agents, contractors, licensees or invitees, including without limitation, any renovation or construction work carried out by or for the benefit of Landlord which materially and unreasonably disrupts Tenant's usual and customary business operation, or (iii) any breach or default in the performance or observance of Landlord's covenants or obligations under this Lease, subject to applicable cure periods.

## ARTICLE IX.

### INSURANCE

9.1     Tenant shall, at its sole cost and expense, procure and maintain throughout the Term of this Lease a policy or policies of general liability insurance, insuring Tenant, Landlord, and any other persons designated by Landlord against any and all liability for injury to or death of a person or persons and for damage to property occasioned by or arising out of the condition of the Premises, the use or occupancy of the Premises, any construction work being done on the Premises by Tenant, and any contractual liability arising hereunder. Such policy shall have a minimum single limit of coverage not less than $2,000,000. Tenant shall, at its sole cost and expense, procure and maintain during the term of this Lease and any renewals thereof, all-risk extended coverage insurance insuring Tenant's personal property. The policy or policies shall provide for payment of claims on an occurrence basis. Such insurance shall be issued for periods of not less than one (1) year, and shall be written by an insurance company or companies

8

N JAG 386541 v8
013694-0014 09/16/2002

authorized to engage in the business of general liability insurance in Tennessee. Such policies shall be noncancellable except after thirty (30) days' written notice to Landlord and designees of Landlord. Such policies or duly executed certificates of insurance with respect thereto shall be delivered to Landlord within five (5) days following the Commencement Date and renewals thereof as required shall be delivered to Landlord at least thirty (30) days prior to the expiration of the respective policy terms.

9.2    Landlord shall maintain a policy of all-risk property damage insurance on the Building for its full replacement cost and general liability insurance covering the Common Areas on an occurrence basis with a minimum single limit of coverage not less than $2,000,000. Such policies shall be written by an insurance company or companies authorized to engage in the insurance business in Tennessee. Landlord shall furnish Tenant with certificates evidencing such coverage during the term of this Lease.

9.3    Landlord and Tenant each hereby waives any and all rights of recovery, claim, action or cause of action, against the other, and/or its agents, officers, or employees, for any loss or damage that may occur to the Premises or the Building, or any improvements thereto, or any personal property of such party therein, by reason of fire, the elements, or any other cause which loss is insured against and collected under the terms of any insurance carried or required to be carried hereunder, including negligence of the other party hereto, its agents, officers or employees. Because this provision will preclude the assignment of any claim mentioned in it by way of subrogation (or otherwise) to an insurance company (or any other person), each party hereto agrees to give immediately to any insurer that has issued to it policies of fire and extended coverage insurance written notice of the mutual waiver contained in this provision (and to provide evidence of the source to the other party if requested) and to have such policies endorsed, if necessary, to prevent the invalidation of insurance coverage by reason of such mutual waiver.

## ARTICLE X.

## DAMAGE BY CASUALTY

10.1    Tenant shall give immediate written notice to Landlord of any damage to the Premises caused by Casualty (as defined below).

10.2    In the event the Premises shall be damaged by fire, flood, storm, civil commotion, or other similar cause ("Casualty") to an extent repairable within one hundred eighty (180) days from the date of such damage, Landlord shall forthwith proceed to diligently repair all damage to the Premises but not damage to Tenant's personal property. During the period of repair, this Lease shall continue in full force and effect, provided that Rent shall abate in whole or in part if such damage equals or exceeds fifty percent (50%) of the Premises and/or such repair shall deprive Tenant of the use of or access to fifty percent (50%) or more of the Premises for the normal purposes of Tenant's business. No abatement of Rent shall occur if the damage is caused by the negligence of Tenant, its agents, employees, or invitees. Tenant shall not be entitled to

9

N JAG 386541 v8
013694-0014 09/19/2002

and hereby waives, releases, and relinquishes any and all claims against Landlord for any compensation or damage for loss of use of all or any part of the Premises or for any inconvenience or annoyance occasioned by any such damage, destruction, repairs, or restoration of the Premises.

10.3   In the event that Landlord having commenced the same, shall fail to pursue such repair to completion with due diligence within one hundred eighty (180) days from the date of the Casualty damage, or if Casualty damage precludes Tenant from occupying the Premises and conducting its business therein for a period of forty-five (45) days or more from the date such Casualty damage occurred, then Tenant may, at its option, upon five (5) days' written notice to Landlord, terminate this Lease.

10.4   In the event that the Premises is destroyed or is damaged by Casualty to an extent not repairable within one hundred eighty (180) days from the date of such destruction or damage, in Landlord's reasonable judgment, this Lease shall terminate as of the date of such destruction or damage.

## ARTICLE XI.

### EMINENT DOMAIN

11.1   If more than twenty percent (20%) of the Premises is taken for any public or quasi-public use under any governmental law, ordinance, or regulation, or by right of eminent domain, or by private purchase under threat thereof, and if as a result, Tenant is materially prevented from using or accessing the Premises in substantially the same manner as theretofore used or accessed, then this Lease shall terminate on the day prior to the taking of possession by such condemning authority or the day prior to vesting of title in such authority, whichever first occurs, and an appropriate pro rata portion of any Rent paid in advance by Tenant shall be refunded.

11.2   If less than twenty percent (20%) of the Premises is taken for any public or quasi-public use under any governmental law, ordinance, or regulation, or by right of eminent domain, or by purchase under threat thereof, or if more than twenty percent (20%) of the Premises is so taken and this Lease is not terminated in accordance with Section 11.1, then in either of such events the Rent payable hereunder during the unexpired portion of the Term shall be reduced in proportion to the percentage which the area taken bears to the area of the Premises prior to the date possession of such portion of the Premises is taken by the condemning authority.

11.3   Any election to terminate this Lease following condemnation shall be evidenced by written notice of termination delivered to the other party within thirty (30) days after the date by which both Landlord and Tenant are notified of such taking or such sale, and, in the event that neither Landlord nor Tenant shall so exercise such election to terminate this Lease, then this Lease shall continue in full force and effect.

11.4   If this Lease is not terminated following any condemnation, Landlord shall make all reasonably necessary repairs or alterations necessary to make the Premises an architectural whole.

10

N JAG 386541 v6
013694-0014 09/16/2002

11.5    All compensation awarded for any taking (or the proceeds of private sale under threat thereof), whether for the whole or a part of the Premises, shall be the property of Landlord, whether such award is compensation for damages to Landlord's or Tenant's interest in the Premises, and Tenant hereby assigns all of its interest in any such award to Landlord; provided, however, Landlord shall have no interest in any award made to Tenant for loss of business, for *moving expense, the unamortized cost of any tenant improvements made to the Premises,* or for the taking of Tenant's fixtures and personal property within the Premises, if a separate award for such items is made to Tenant.

## ARTICLE XII.

## ASSIGNMENT AND SUBLETTING

12.1    Tenant shall not assign or transfer all or any portion of its interest in this Lease or in the Premises, or sublet all or any portion of the Premises, without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed. Any assignment or sublease without Landlord's prior written consent shall be void, and, at Landlord's election, shall constitute a default of Tenant hereunder. Notwithstanding the foregoing, Tenant may assign or sublease without Landlord's consent, but upon written notice to Landlord, to an entity which (i) controls, is controlled by, or under common control with Tenant, (ii) merges with Tenant, (iii) acquires at least fifty-one percent of the stock of Tenant, or (iv) *acquires substantially all of the assets of Tenant,* and which expressly assumes in writing this Lease. The term "sublet" shall be deemed to include the granting of licenses, concessions, and any other rights of occupancy of any portion of the Premises. Notwithstanding anything to the contrary contained herein, in the event that Tenant assigns or sublets any or all of its interest under this Lease, Tenant shall nonetheless remain liable under the terms of this Lease unless Landlord specifically releases Tenant from liability hereunder, in writing.

12.2    At anytime and from time to time, Tenant may assign or encumber its leasehold interest by one or more mortgages or deeds of trust (a "Leasehold Mortgage") containing such terms and provisions as Tenant may, in its sole discretion, deem fit and proper. Such right to encumber Tenant's leasehold interest created by this Lease shall in no way imply that the fee interest of the Landlord or any other interest of the Landlord in the Building or Land shall be subject or subordinate to any such Leasehold Mortgage. If requested by any holder of a *Leasehold Mortgage, Landlord shall enter into a nondisturbance and attornment agreement* provided that the same contains terms reasonably acceptable to Landlord; provided, however such agreement shall not subordinate Landlord's interest to the interest of the holder of the Leasehold Mortgage. If a Leasehold Mortgagee shall have delivered to Landlord written notice stating the existence of its Leasehold Mortgage and setting forth the name and address of such Leasehold Mortgagee, Landlord thereafter shall give to such Leasehold Mortgagee (a "Registered Mortgagee") simultaneously with giving of such notice to Tenant, a copy of each *notice under Articles XIV and XVII which Landlord shall give to Tenant, such copy to be* addressed to such Leasehold Mortgagee at the address last furnished to Landlord by notice. The Mortgage held by such Registered Mortgagee shall be referred to as a "Registered Mortgage."

(a)    Any Leasehold Mortgagee shall have the right, but not the obligation, to perform Tenant's obligations under this Lease. Landlord will accept performance by any

11

N JAG 386541 v8
013694-0014 09/16/2002

Leasehold Mortgagee of any term, covenant or condition on Tenant's part to be performed hereunder, with the same force and effect as though timely performed by Tenant, if performed within the time periods described in subsections (i) and (ii) below.

      (i)    Monetary Defaults. As to any payment of Rent, within forty-five (45) days after notice of such Event of Default is given by Landlord to such Mortgagee as provided in Section 14.2 below.

      (ii)   Non-Monetary Defaults. As to all other Events of Default, within seventy-five (75) days after notice of such Event of Default is given by Landlord to such Mortgagee as provided in Section 14.1 below; provided, however, that Landlord will accept performance by such Mortgagee if such Mortgagee has commenced to cure such Event of Default within sixty (60) days after such Notice under Section 14.1 and is diligently and continuously proceeding therewith, even if completion of the cure takes a longer period of time. Notwithstanding the foregoing, the fact that the Landlord may have given notice of Event of Default to a Registered Mortgagee and such Registered Mortgagee (or another Mortgagee) may have additional time to cure such default, shall not impair or diminish any rights of the Landlord to proceed against the Tenant for such Event of Default (provided that Landlord shall not terminate this Lease in such circumstances until after the applicable time periods contemplated hereby) including the right to charge interest on late payments of Rent hereunder and the right to collect late charges in connection therewith.

    (b)    Mortgagee Remedies. Landlord shall not have the right to exercise Landlord's right to terminate this Lease during the time that any Registered Mortgagee shall require to exercise its rights under its Mortgage, provided that (a) the Registered Mortgagee proceeds promptly and with due diligence to exercise its rights and remedies under its Mortgage and thereafter prosecutes the same with diligence to completion (subject to such stays and other delays as may be imposed in bankruptcy or other proceedings), and (b) the Registered Mortgagee shall promptly (i) pay when due to Landlord and other persons all payments required to be paid by Tenant hereunder which have accrued and, as they accrue, all payments required to be paid by Tenant hereunder which shall become due and payable during such period of time, and (ii) perform when required all other obligations of Tenant hereunder during such period of time which are reasonably susceptible of being performed by the Registered Mortgagee, it being acknowledged that some obligations cannot be performed by the Mortgagee until possession or legal title is acquired, provided, however, such Mortgagee shall provide notice to the Landlord of such obligations that it cannot so cure within thirty (30) days after such obligations accrue and such Mortgagee or other person or entity succeeding to the interest of Mortgagee shall be obligated hereunder so to cure such obligation within sixty (60) days after obtaining possession of the Premises or otherwise eliminating the circumstance that prevented such cure. Provided, further, in the event that the efforts of Mortgagee to obtain possession of the Premises or otherwise to foreclose on the estate of the Tenant are suspended or not pursued vigorously, and such failure continues for a period of thirty (30) days after notice from Landlord, and more than

12

N JAG 386541 v8
013694-0014 09/16/2002

ninety (90) days have elapsed since the expiration of the applicable period under Section 12.2(a), then Landlord's rights of termination hereunder shall be reinstated. No Mortgagee shall have the right to sue Landlord for, or seek damages from Landlord, in the event that the Lease has been terminated after the foregoing notice has been given by the Landlord and the Tenant or the Leasehold Mortgagee have failed to cure any such default. The obligations of the Mortgagee under this Section 12.2(b), shall not deprive the Mortgagee of its various rights to Notice and cure as provided above.

(c)     No Surrender or Modification Without Notice.   Anything else herein contained to the contrary notwithstanding, Landlord and Tenant mutually covenant and agree that so long as there exists any unpaid Registered Mortgage, this Lease shall not be modified, amended or altered and that Landlord shall not accept a surrender of the Premises or a termination, cancellation or release of this Lease from Tenant (except pursuant to the exercise of Landlord's remedies should an Event of Default occur after first complying with the requirements of this Section 12.2(c)) prior to the expiration of the Lease Term, without the prior written consent of such Registered Mortgagee.

(d)     Mortgagee as Tenant.    The Mortgagee, or its designee or nominee, acquiring the leasehold estate under this Lease shall be obligated under this Lease only so long as it shall be vested (other than as security for a debt) with title to all, or any estate or interest in, the leasehold estate under this Lease or the new lease; such liability, however, shall extend to and include, all events and circumstances relating to or first occurring during the period that such Mortgagee owned the leasehold estate or interest therein created hereby.

(e)     Termination of Lease in Bankruptcy.    In the event that this Lease is terminated as a result or as part of a bankruptcy, insolvency or similar proceeding involving the Tenant, then the Registered Mortgagee will have the right to require the Landlord to enter into a new lease with the Registered Mortgage on the same terms and conditions as this Lease provided that all of the following conditions are satisfied:

(i)     The Registered Mortgagee provides a written notice to the Landlord stating that it desires so to enter into such a new Lease the Effective Date of which notice is within thirty (30) days of the date of the order or other ruling that resulted in the termination of this Lease (hereinafter referred to as the "Rejection Date");

(ii)    The Registered Mortgagee actually executes and delivers to the Landlord such new lease within sixty (60) days after receiving notice of the Rejection Date;

(iii)   The Registered Mortgagee has caused all payments of Base Rent from the Rejection Date to the date of such new lease to be paid to the Landlord.

12.3    The term "Landlord" as used in this Lease means only the owner or entity from time to time owning the Premises, so that in the event of any sale or sales thereof, the owner or entity who is a grantor in any such sale shall be and hereby is, without further agreement,

13

N JAG 386541 v8
013694-0014 09/16/2002

entirely freed and relieved of all the obligations of Landlord hereunder accruing after such sale. Any such sale or sales of the Premises, unless pursuant to a foreclosure sale or deed in lieu of such foreclosure, shall be subject to this Lease, and it shall be deemed and construed without further agreement that the purchaser at any such sale has assumed and agreed to carry out any and all obligations of Landlord under this Lease so long as such purchaser shall be the owner of the Premises.

## ARTICLE XIII.

## TAXES

13.1    Tenant shall reimburse Landlord for Tenant's Proportionate Share of the Real Estate Taxes assessed against the Land and Building within thirty (30) days of written notice from Landlord, such notice to be accompanied by a copy of the tax bill or statement and evidence of Landlord's payment thereof. Notwithstanding anything in this Section 13.1 to the contrary, from the Commencement Date through the earlier of (i) the initial thirty-six (36) months of the Lease Term, or (ii) the leasing of eighty percent (80%) of the Building, Tenant shall reimburse Landlord for fifty percent (50%) of the Real Estate Taxes incurred and commencing on the first day of the month of the Lease Term following the first to occur of (i) or (ii) above for the remainder of the Lease Term Tenant shall reimburse Landlord for the Real Estate Taxes at Tenant's Proportionate Share.

## ARTICLE XIV.

## DEFAULTS AND REMEDIES

14.1    If, except as otherwise provided herein, Tenant fails to keep or perform any covenant or provision of this Lease (except the payment of any installment of Rent or other charge or money obligation herein required to be paid by Tenant to Landlord) or violates any covenant or provision of this Lease, and such failure or violation shall continue for a period of thirty (30) days after written notice by Landlord, or in case of a failure or violation which cannot with due diligence be cured within a period of thirty (30) days, if Tenant fails to cure such failure or violation promptly after the service of such notice and with all due diligence, then Landlord may in addition to any other remedies at law or in equity or elsewhere in this Lease provided, cure or prosecute the curing of such failure or violation at reasonable expense, which expense shall be deemed to be additional rental hereunder and shall be paid to Landlord by Tenant on demand. Tenant agrees that in the event of any failure or violation covered by this Section all rights of Landlord under this Section may be exercised by persons acting on behalf of Landlord, under authority granted by Landlord, with full right of reimbursement as provided hereunder. Tenant agrees that neither Landlord nor any person acting on Landlord's behalf shall be liable for any loss or damage suffered by Tenant resulting from the exercise of the rights granted under this Section.

14.2    Intentionally omitted.

14.3    The happening of any one or more of the following shall be deemed to be events of default under this Lease:

14

N JAG 386541 v8
013694-0014 09/16/2002

(a)    The making by Tenant of an assignment for the benefit of its creditors;

(b)    The levying of a writ of execution or attachment on or against the property of Tenant within the Premises and the same not being released or discharged within fifteen (15) days thereafter;

(c)    The institution of proceedings in a court of competent jurisdiction for the reorganization, liquidation, or voluntary or involuntary dissolution of Tenant, or for its adjudication as a bankrupt or insolvent, and/or for the appointment of a receiver of the property of Tenant, and said proceedings not being dismissed, and any receiver, trustee, or liquidator appointed therein not being discharged, within fifteen (15) days after the institution of such proceedings;

(d)    The doing, or permitting, of any act by Tenant which creates a lien or claim therefor against the land or building of which the Premises are a part and the same not being released or otherwise provided for by indemnification satisfactory to Landlord within twenty (20) days thereafter;

(e)    Failure of Tenant to pay any installment of Rent or other charge or money obligation herein required to be paid by Tenant to Landlord within ten (10) days of the date due; provided, however, that Tenant shall be entitled to one (1) written notice from Landlord per calendar year that a Rent payment is late, and in such instance, the failure of Tenant to pay such installment of Rent within ten (10) days after written notice from Landlord that such Rent payment is late shall constitute an Event of Default hereunder; or

(f)    Failure of Tenant to comply with any covenant or provision of this Lease (except payment of any installment of Rent or other charge or money obligation herein required to be paid by Tenant to Landlord) within thirty (30) days after written notice of such failure to comply is given by Landlord, or if it is not feasible to cure such failure within such period, to begin performance of such covenant within such period and to diligently pursue performance to completion in a reasonable time thereafter.

14.4    Upon the occurrence of any of such events of default, and subject to applicable notice and cure periods set forth herein, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(a)    Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord. Landlord may, without prejudice to any other remedy which it may have, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises or any part thereof without being liable for prosecution or any claim of damages therefor.

(b)    Not terminate this Lease but rather enter upon and take possession of the Premises and, if Landlord so elects, make such alterations and repairs as may be necessary to relet the Premises, place "for lease" signs within the Premises, and relet the Premises or any part thereof, as the agent of Tenant, at such rent and for such term and subject to such terms and conditions as Landlord may deem advisable and receive the rent therefor. Upon each such reletting all rentals received by Landlord from such reletting shall be applied, first, to the

15

N JAG 386541 v8
013694-0014 09/16/2002

payment of any indebtedness other than Rent due hereunder from Tenant to Landlord; second, to the payment of any loss and expenses of such reletting, including brokerage fees and attorneys' fees and costs of such alterations and repairs; third, to the payment of Rent and other charges due and unpaid hereunder, and the residue, if any, shall be held by Landlord and applied in payment of future Rent as the same may become due and payable hereunder, and Tenant agrees to pay to Landlord on demand any deficiency that may arise by reason of such reletting. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous breach.

(c)    Should Landlord at any time terminate this Lease for any breach, in addition to any other remedies it may have, it may recover from Tenant all reasonable damages it may incur by reason of such breach, including the cost of recovering the Premises and reasonable attorneys' fees.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided at law or in equity, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any Rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the covenants and provisions herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default.

14.5    If, because of any breach or default of either party's obligations hereunder, it shall become necessary for either party to employ an attorney to enforce or defend any of its rights or remedies hereunder, the non-prevailing party shall pay the reasonable attorneys' fees and expenses incurred by the prevailing party in such event, in addition to any relief granted or otherwise agreed.

## ARTICLE XV.

## HOLDING OVER

15.1    If Tenant remains in possession of the Premises after the termination of this Lease and without the execution of a new lease, Tenant shall be deemed to be month-to-month tenant at a rent equal to the Rent herein provided plus twenty-five (25%) of such amount and otherwise subject to all the covenants and provisions of this Lease.

## ARTICLE XVI.

## SUBORDINATION

16.1    Tenant agrees to subordinate this Lease to any mortgage or deed of trust and related financing instruments which may now or hereafter affect the Premises, and to all renewals, modifications, consolidations, replacements, amendments and extensions thereof, provided that the secured party or holder of any such mortgage or deed of trust agrees with Tenant not to disturb the possession of Tenant in the Premises following the foreclosure of such

16

N JAG 386541 v8
013694-0014 09/16/2002

mortgage or deed of trust or other proceedings to enforce such mortgage or deed of trust, *so long as* Tenant is not in default hereunder.

16.2   Landlord shall obtain the agreement of any existing holder of a mortgage or deed of trust on the Building that it will not disturb the possession of Tenant in the Premises following the foreclosure of such mortgage or deed of trust or other proceedings to enforce such mortgage or deed of trust, so long as Tenant is not in default hereunder.

16.3   If any person shall succeed to all or part of *Landlord's interest in the Premises,* whether by purchase, foreclosure, deed in lieu of foreclosure, power of sale, termination of lease, or otherwise, and if so requested or required by such successor in interest, Tenant shall attorn to such successor in interest and shall execute such agreement in confirmation of such attornment as such successor in interest shall reasonably request. Upon the attornment provided for herein, this Lease shall continue in full force and effect as a direct lease between such successor landlord and Tenant, subject to all the terms, covenants, and conditions of this Lease.

## ARTICLE XVII.

## NOTICES

17.1   Whenever any notice is required or permitted hereunder, such notice shall be in writing. Any notice or document required or permitted to be given hereunder shall be hand delivered, deposited in the United States Mail, postage prepaid, certified mail, return receipt requested, or by nationally-recognized overnight delivery (e.g. FedEx, UPS, Airborne) addressed to *Landlord at Landlord's Mailing Address or to Tenant at Tenant's Mailing Address as noted in* Article I. Any such notice shall be deemed given when delivered by hand, three (3) days after so depositing it in the United States Mail, or one (1) day after deposit with a nationally-recognized overnight delivery service.

## ARTICLE XVIII.

## OPTION TO EXTEND TERM

18.1   Landlord hereby grants to Tenant the right to extend the Term for two (2) successive periods of five (5) years each upon the same terms and provisions of this Lease at the rental specified for each such option term in Section 1.1(b), provided that Tenant is not in default of any duty or obligation hereunder upon the expiration of the then current Term.

18.2   Each option to extend the Term shall be exercised by Tenant notifying Landlord in writing, pursuant to the notice provisions hereof, of Tenant's election to exercise such *extension option no later than six (6) months prior to the end of the then current Term. In the* event Tenant has not timely notified Landlord of its exercise of the next available option, Tenant's right to exercise a renewal option shall nevertheless continue until thirty (30) days after Tenant receives written notice from Landlord of Landlord's election to terminate that renewal option, and Tenant may exercise that renewal option at any time until expiration of thirty (30) days after receipt of Landlord's notice. Tenant's failure to exercise properly any given option to

N JAG 386541 v8
013694-0014 09/16/2002

17

extend pursuant to the provisions hereof shall result in the termination of this Lease at the end of the then current Term, unless sooner terminated as provided herein.

## ARTICLE XIX.

### ENVIRONMENTAL COMPLIANCE AND INDEMNITY

19.1    Tenant covenants and agrees that (a) Tenant, its agents and employees shall not discharge, dump, or spill any Hazardous Substances (as hereinafter defined) on or about the Premises during the Term; and (b) to the extent Tenant, its agents and employees use or store any Hazardous Substances on or about the Premises or Building during the Term, Tenants, its agents and employees shall only do so or allow same in accordance with all applicable laws, rules, regulations, codes, and governmental requirements.

19.2    Tenant shall comply with all local, state and federal laws, statutes, regulations and ordinances related to environmental protection or compliance, whether currently in effect or which may come into effect in the future, including, but not limited to, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901 et seq., the Clean Water Act, 33 U.S.C. Section 1251 et seq., the Clean Air Act, 42 U.S.C. Section 7401 et seq., the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq., the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et seq., the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq., the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., the Tennessee Hazardous Waste Management Act of 1977, T.C.A. §68-212-101 et seq., and the Tennessee Hazardous Waste Management Act of 1983, T.C.A. §68-212-201 et seq., all as they may be amended, modified or replaced (collectively, "Applicable Environmental Law"). Tenant shall comply with Applicable Environmental Law related to the generation, handling, transportation, treatment, storage and/or disposal of solid or Hazardous Materials (as defined below).

19.3    Tenant agrees to and shall indemnify, defend, protect and hold Landlord, its employees, officers, agents and affiliates harmless from and against any and all liabilities, losses, obligations, claims, damages (consequential or otherwise), penalties, suits, actions, judgments, costs and expenses (including attorneys' fees) of whatever nature, including, but not limited to, any claims, suits, causes of action for personal injury (including death) of persons (including agents and employees of Landlord and Tenant) or property damage (including that of Landlord or Tenant), which may be imposed on, incurred by or asserted against Landlord directly or indirectly, arising out of a breach by Tenant, its agents, employees, contractors, invitees, or licensees of the covenants of this Article.

19.4    Landlord agrees to and shall indemnify, defend, protect and hold Tenant, its employees, officers, agents and affiliates harmless from and against any and all liabilities, losses, obligations, claims, damages (consequential or otherwise), penalties, suits, actions, judgments, costs and expenses (including attorneys' fees) of whatever nature for personal injury (including death) of persons (including agents and employees of Landlord and Tenant) or property damage (including that of Landlord or Tenant), which may be imposed on, incurred by or asserted

18

against Tenant directly or indirectly, caused in whole or in part by the presence of Hazardous Substances in the Premises or the Building or on the Land which are caused or permitted to be present upon the Premises or in the Building or on the Land by Landlord, its agents, employees, contractors, tenants (other than Tenant), and licensees after the execution of this Lease, or Landlord's, its agents, employees, contractors, tenants (other than Tenant), invitees, and licensees failure to comply with any local, state, or federal law, regulation, or ordinance related to environmental compliance or environmental protection.

19.5    As used herein, the term "Hazardous Materials" means gasoline, motor oil, fuel oil, waste oil, other petroleum or petroleum-based products, asbestos, lead-based paint, polychlorinated biphenyls, medical and infectious wastes and any chemical, material or substance to which exposure is prohibited, limited or regulated by any federal, state, county, local or regional authority or which, even if not so regulated, is known to pose a hazard to health and safety, including but not limited to substances and materials defined or designated as "hazardous substances", "hazardous wastes", "pollutants", "contaminants", "hazardous materials" or "toxic substances" under any Applicable Environmental Law.

19.6    The obligations of each party set forth in this Article shall survive the termination of this Lease.

## ARTICLE XX.

## MISCELLANEOUS

20.1    Tenant agrees that upon the request of either Landlord or the holder of any mortgage, deed of trust, or other security instrument in the nature thereof encumbering Landlord's interest hereunder or in the Premises, Tenant shall send to such holder copies of all notices sent to Landlord, such copies to be forwarded to such holder as and when such notices are sent to Landlord and at the mailing address from time to time provided to Tenant by either Landlord or such holder.

20.2    The captions and the table of contents used in this Lease are for convenience only and do not in any way limit or amplify the terms and provisions hereof. Whenever the singular number is used the same shall include the plural, and words of any gender shall include each other gender.

20.3    One or more waivers of any covenant, term, or condition of this Lease by either party shall not be construed as a waiver of any subsequent breach of the same covenant, term, or condition. The consent or approval by either party to or of any act by the other party requiring such consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

20.4    Landlord hereby covenants and agrees that if Tenant shall perform all of the covenants and agreements herein required to be performed on the part of Tenant, Tenant shall, subject to the terms of this Lease, at all times during the continuance of this Lease have the peaceable and quiet enjoyment and possession of the Premises.

19

N JAG 386541 v8
013694-0014 09/16/2002

20.5    This Lease contains the entire agreement between the parties, including all obligations undertaken by either Landlord or Tenant, and no agreement, representation, or inducement made prior or subsequent to entering into this Lease or during the course of the negotiation of this Lease by either Landlord, Landlord's agent or representative, or Tenant shall be binding or effective to change, modify, amend or terminate this Lease in whole or in part unless in writing and signed by the parties.

20.6    Each party represents warrants to the other that it has had no dealings with any broker in connection with the negotiations or execution of this Lease, and each party agrees to indemnify and hold the other harmless from and against any and all cost, expense, or liability for commissions arising out of a breach of this representation and warranty.

20.7    At any time and from time to time, Tenant, on or before the date specified in a written request made by Landlord, which date shall not be earlier than twenty (20) days from the making of such written request, shall execute, acknowledge and deliver to Landlord a certificate with respect to the status of this Lease and Tenant's occupancy of the Premises, in form and addressing such specific issues as Landlord may reasonably require, including, without limitation, the following:

        (a)    Whether this Lease is in full force and effect;

        (b)    Whether this Lease has been amended in any way;

        (c)    Whether there are any existing defaults hereunder to the knowledge of Tenant and specifying the nature of such default, if any;

        (d)    Setting forth the Commencement Date and the expiration date of the Lease Term; and

        (e)    Setting forth the date to which Rent has been paid.

Each certificate delivered pursuant to this Section 20.7 may be relied on by any prospective purchaser or transferee of the Premises or of Landlord's interest hereunder or by any mortgagee of the Premises or of Landlord's interest hereunder or by any assignee of any such mortgagee.

20.8    The terms, provisions and covenants contained in this Lease shall apply to, inure to the benefit of, and be binding upon the parties hereto and their respective heirs, assigns, successors in interest, and legal representatives except as otherwise herein expressly provided; provided, however, that all claims, demands, or causes of action which Tenant may at any time thereafter have against Landlord because of Landlord's failure to comply with any provision hereof shall be enforceable solely against Landlord's right, title, and interest in the Premises and no other property of Landlord shall be subject to any such claim, demand, or cause of action.

20.9    Time is of the essence in this Lease.

20.10    The laws of the State of Tennessee shall govern the interpretation, validity, performance, and enforcement of this Lease.

20

20.11  If any term, covenant, or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant, or condition to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby and each term, covenant, or condition of this Lease shall be valid and be enforced to the fullest extent permitted by law.

20.12  Nothing herein contained shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnership or joint venture between the parties hereto, it being understood and agreed that neither the method of computation of Rent, nor any other provision contained herein, nor any acts of the parties hereto, shall be deemed to create any relationship between the parties hereto other than the relationship of landlord and tenant.

**21**

N JAG 386541 v8
013694-0014 09/16/2002

IN WITNESS WHEREOF, the parties have caused this Lease to be executed by their duly authorized representatives, the day and year indicated below.

DATED AS TO LANDLORD:

_September 19, 2002_

LANDLORD:

de MONTBRUN - PARK HOLDINGS, LLC

By: _____
J. D. Park

Its:   Chief Manager

DATED AS TO TENANT:

_September 19, 2002_

TENANT:

GORDON   BIERSCH   BREWERY RESTAURANT GROUP, INC.

By: _____
H. Allen Corey

Its:   President

22

N JAG 386541 v8
013094-0014 09/16/2002

EXHIBIT "A"

PREMISES DESCRIPTION



EXHIBIT "A" - continued



EXHIBIT A
PAGE 2  A1.1

## EXHIBIT "B"

### LEGAL DESCRIPTION OF LAND

Being a certain tract of land located at the southeast intersection of Broadway Street and Second Avenue South in the 19th Councilmanic District of Metropolitan Nashville, Davidson County, Tennessee, and being more particularly described as follows:

Beginning at the northwest corner of a 3 story brick building located on the herein described tract, said corner being at the east right-of-way of Second Avenue South and at the south right-of-way of Broadway Street; thence,

With the south right-of-way of Broadway Street along the face of the aforementioned building North 57 degrees 56 minutes 25 seconds East, passing the northeast corner of said building at 100.11 feet, in all 107.61 feet to a P.K. Nail (N), said P.K. Nail (N) located in the center of Alley No. 12 which was abandoned by Ordinance No.BL2000-252; thence,

Along the center of said abandoned Alley No. 12, South 31 degrees 45 minutes 38 seconds East 149.99 feet to a P.K. Nail (N) in the north margin of Alley No. 13; thence,

Along the north margin of Alley No. 13, South 57 degrees 54 minutes 37 seconds West, passing the southeast corner of the aforementioned building at 7.50 feet and along the face of said building, in all 107.58 feet to the southwest corner of said building located in the east right-of-way of Second Avenue South; thence,

With said right-of-way along the face of the aforementioned building North 31 degrees 46 minutes 14 seconds West 150.04 feet to the point of beginning, containing 16,141 square feet or 0.371 acres, more or less, as shown by survey made by David A. Johnson, Registered Land Surveyor No. 1352, Ragan-Smith Associates, 315 Woodland Street, Nashville, Tennessee 37206, dated October 7, 1997 and last revised September 6, 2002, bearing Job No. 97-121/7055.

BEING the same property conveyed to Big River Properties, Inc., by Deed of Record in Book 9434, page 320, Register's Office for Davidson County, Tennessee, and also being part of the same property vested in Big River Properties, Inc. pursuant to Metropolitan Council Bill No. BL2000-252 wherein alleyway was abandoned by Metro.

N JAG 386541 v8
013694-0014 09/16/2002

## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** (this "Amendment") is made and entered into by and between **TOWER 111 BROADWAY, LLC**, a Delaware limited liability company ("Landlord"), and **GORDON BIERSCH BREWERY RESTAURANT GROUP, INC.**, a Tennessee corporation (the "Tenant") as of the 21 day of November, 2012.

## R E C I T A L S:

A.    On September 19, 2002, Tenant and De Montbrun – Park Holdings, LLC, a Tennessee limited liability company ("Original Landlord") entered into that certain Lease (the "Lease"), for those approximately 18,498 square feet (the "Original Premises") of space within the Building located at 111 Broadway, Nashville, Tennessee, as more particularly described in Lease.

B.    On February 1, 2006, Original Landlord sold the Building and assigned the Lease to Landlord.

C.    Landlord and Tenant desire to amend the Lease as set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein, the Lease is hereby amended on the terms and conditions hereinafter set forth, and Landlord and Tenant hereby further agree as follows.

1.    <u>Amendments</u>.  The Lease is hereby amended as follows:

a.    <u>Base Rent</u>.  Section 1.1(a) of the Lease is hereby deleted in its entirety, and the following substituted in lieu thereof:

| Area | Lease Year* | Rent (NNN) | Square Feet | Annual Base Rent |
|---|---|---|---|---|
| Basement and 1st Floor | Years 1-5 | $15.50 | 18,498 | $286,719.00 |
| Basement and 1st Floor | Years 6-10 | $17.83 | 18,498 | $329,819.34 |
| Basement and 1st Floor | Years 11-15 (1st Option) | $20.51 | 18,498 | $379,393.98 |
| Basement and 1st Floor | Years 16-20 (2nd Option) | $23.59 | 18,498 | $436,367.82 |
| 2nd Floor** | Years 1-5 | $18.16 | 4,810 | $87,349.60 |
| 2nd Floor | Years 6-10 | $19.98 | 4,810 | $96,103.80 |
| 2nd Floor | Years 11-15 (1st Option) | $21.98 | 4,810 | $105,723.80 |
| 2nd Floor | Years 16-20 (2nd Option) | $24.18 | 4,810 | $116,305.80 |
| Penthouse | Years 1-5 | $41.52 | 3,255 | $135,147.60 |
| Penthouse | Years 6-10 | $45.67 | 3,255 | $148,655.85 |
| Penthouse | Years 11-15 (1st Option) | $50.24 | 3,255 | $163,531.20 |
| Penthouse | Years 16-20 (2nd Option) | $55.26 | 3,255 | $179,871.30 |

*Commencing on Amendment Commencement Date (defined below)
** Base Rent for the portion of the Premises located in the 2nd Floor of the Building shall be abated until such time as such time as the current occupant vacates such

1

space and the same is delivered to Tenant. Landlord estimates that the portion of the Premises located in the 2nd Floor of the Building will be delivered to Tenant on or before April 30, 2013. Base Rent for any partial month of Tenant's occupancy of such portion of the 2nd Floor of the Building shall be prorated.

b.  <u>Lease Term or Terms</u>. Section 1.1(h) of the Lease is hereby amended to reflect that the Lease Term is hereby extended for a period of ten (10) years, commencing on January 2, 2013 (the "Amendment Commencement Date"), and expiring on December 31, 2022, subject to any extensions thereof pursuant to Article XVIII of the Lease.

c.  <u>Premises</u>. Section 1.1(j) of the Lease is hereby deleted in its entirety, and the following substituted in lieu thereof:

"A total of 26,563 square feet of space within the Building, comprised of the basement and first floor level (consisting of 18,498 square feet), penthouse (consisting of 3,255 square feet), and a portion of the second floor level of the Building (consisting of 4,810 square feet), together with a right of first refusal for an outdoor seating area along Basin Alley, as more particularly shown by hatching on the floor plan diagrams attached to this Amendment as **Exhibit A-1**. "

d.  <u>Tenant's Proportionate Share</u>. Section 1.1(n) of the Lease is hereby deleted in its entirety, and the following substituted in lieu thereof:

"Shall mean the ratio of the rentable area of the Premises to the total amount of rentable area in the Building, and such percentage is acknowledged to be fifty four percent (54%). Notwithstanding the foregoing, until such time as a third party tenant takes occupancy of any currently vacant space on the second and/or third floors of the Building, Tenant's Proportionate Share with respect to such vacant areas shall be deemed to be one hundred percent (100%)."

e.  <u>Tenant's Use</u>. Section 4.1 of the Lease is hereby deleted in its entirety, and the following substituted in lieu thereof:

"Tenant shall use and occupy the Premises for the Permitted Use, as well as for retail and banquet space, but for no other use, without the prior written consent of Landlord, which shall not be unreasonably withheld, conditioned or delayed, provided that this provision shall not be construed as a covenant to continuously operate in the Premises. During the Lease Term and any extensions thereof, neither Landlord nor any successor to Landlord shall enter into a lease agreement or other agreement for occupancy of space in the Building (the "Restricted Area") with a Competitor (as defined below) for a term scheduled to commence during the Lease Term or any extensions thereof. For purposes of this Section 4.1, a "Competitor" shall mean (a) any tenant (1) whose lease or other agreement with Landlord or successor to Landlord for occupancy of space (an "Occupancy Agreement") in the Restricted Area is dated on or after the date of this Lease and (2) who operates a full service brewery restaurant holding itself out in any part as a brewery or a microbrewery; (b) any tenant or occupant to which Landlord or successor to Landlord grants permission to change its use to a brewery or micro-brewery, if such tenant or occupant is not otherwise permitted to do so by the terms of its Occupancy Agreement; (c) any multiple tap restaurant with more than twenty five (25) taps; (d) Kona Grill, or a successor thereto; (e) Yard House, or a successor thereto; and/or (f) BJ's, or a successor thereto."

2

2.  <u>Trade Name</u>. Tenant may, at Tenant's sole option, rebrand and change the name of the restaurant from Big River Brewery to Rock Bottom Brewery. In the event Tenant elects to rebrand the Premises as part of the expansion work or at a later date mutually agreed upon by both Landlord and Tenant, Tenant shall (i) make changes in its signage to reflect the rebranding of the restaurant, which shall be subject to Landlord's prior written approval as set forth in Section 6.1 of the Lease, and (ii) continue to operate the Premises in accordance with the Permitted Use set forth in Section 1.1.(i) of the Lease, and if Tenant has elected to rebrand the Premises as aforesaid permitted, "Tenant's Trade Name" shall be amended by replacing "Big River Brewery" with "Rock Bottom Brewery".

    Notwithstanding the foregoing, Tenant shall have permission to place signage on the roof top; subject to Article VI of the Lease.

3.  <u>Common Area Maintenance Expenses</u>. Tenant shall pay to Landlord, monthly in advance as additional rent, Tenant's Proportionate Share of one twelfth (1/12) of Landlord's estimate of annual Common Area Maintenance Expenses (defined below). "Common Area Maintenance Expenses", as used herein, shall mean costs and expenses paid or incurred by Landlord related to the operation, insurance, maintenance, repair and management of the Common Area. Tenant's Common Area Maintenance Expenses shall be calculated based on the Common Area, which is defined in Section 1.1.(d) of the Lease (but shall also include the Elevator [defined below]). Within one hundred twenty (120) days following the end of each calendar year, Landlord shall furnish Tenant a reconciliation of estimated Common Area Maintenance Expenses for the preceding year against actual Common Area Maintenance Expenses for such period. A lump sum payment shall be made by Landlord to Tenant or by Tenant to Landlord, as appropriate, within thirty (30) days after the delivery of such reconciliation, in an amount equal to Tenant's Proportionate Share of the amount of any difference between the actual and estimated Common Area Maintenance Expenses for the calendar year in question.

4.  <u>Assignment</u>. Without limiting the generality of Article XII of the Lease, Tenant shall not assign or sublease its rights under the Lease, within the first two (2) years of the Amendment Commencement Date, without Landlord's consent, which consent may be withheld in Landlord's sole discretion.

5.  <u>Elevator Installation</u>. Landlord may elect, by thirty (30) days prior written notice to Tenant, to construct and install an elevator (the "Elevator") serving the first through penthouse levels of the Building, such Elevator to be located in the area (the "Elevator Area") designated as such on **Exhibit A-1** attached hereto. Landlord agrees to use reasonable efforts to avoid disruption of Tenant's daily operation and Tenant's customers (including walling off of the construction area in order to reduce noise). Upon commencement of Landlord's construction and installation of the Elevator, the Elevator Area shall be deemed to be automatically excluded from the Premises, and the Premises, Base Rent and Tenant's Proportionate Share shall be adjusted accordingly, which adjustments shall be documented by an amendment to the Lease. Within thirty (30) days following completion of the Elevator and a written invoice with a breakdown of cost, Tenant shall pay to Landlord a lump sum payment equal to Tenant's Proportionate Share of the actual, out of pocket costs incurred by Landlord in connection with the construction and installation of the Elevator. Notwithstanding the foregoing, Tenant's Proportionate Share of the actual cost shall not exceed $400,000. Tenant will not be responsible for any cost exceeding such amount.

6.  <u>Net Lease</u>. In addition to all other provisions of the Lease (as amended by this Amendment) and not in limitation thereof, the parties agree that the Lease is intended to be, and shall be construed as, an absolutely net lease, whereby under all circumstances and conditions

(whether now or hereafter existing or within the contemplation of the parties) Base Rent shall be a completely net return to Landlord throughout the Term, and Tenant shall pay all costs and expenses with respect to or in connection with the Premises and/or the operation, management, maintenance, repair, use or occupation thereof, or any portion thereof except as set forth in Article 5.2 of the Lease, regarding Landlord's repair obligations and except for the Landlord's obligations otherwise set forth in the Lease.  Except as specifically set forth in the Lease (as amended by this Amendment), Landlord shall not be required to provide any services or do any act in connection with the Premises following the Amendment Commencement Date.

7.  **Condition of Premises**.  Except as expressly set forth in this Amendment or the Lease, Landlord has not made, does not make, and hereby disclaims all representations or warranties regarding the Premises, it being acknowledged that the Premises are leased from Landlord to Tenant in their current condition, "AS IS, WHERE IS, WITH ALL FAULTS".

8.  **Tenant Estoppel**.  Tenant hereby represents and warrants unto Landlord, as of the date first set forth above, that:

    a.  the Lease is in full force and effect;

    b.  the Lease has not been modified or amended, except as provided herein, and is enforceable in accordance with its terms; and

    c.  Landlord is not in default under the Lease nor, to Tenant's actual knowledge (without inquiry or investigation), has Landlord failed to duly and fully perform or observe any term, covenant or condition by it to be performed under the Lease which would, but for the existence of any applicable notice and/or grace period, constitute a default under the Lease.

9.  **Landlord Estoppel**.  Landlord hereby represents and warrants unto Tenant, as of the date first set forth above, that:

    a.  the Lease is in full force and effect;

    b.  the Lease has not been modified or amended, except as provided herein, and is enforceable in accordance with its terms; and

    c.  Tenant is not in default under the Lease nor, to Landlord's actual knowledge (without inquiry or investigation), has Tenant failed to duly and fully perform or observe any term, covenant or condition by it to be performed under the Lease which would, but for the existence of any applicable notice and/or grace period, constitute a default under the Lease.

10.  **Counterparts**.  This Amendment may be executed by facsimile and delivered in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.  Signature and acknowledgment pages, if any, may be detached from the counterparts and attached to a single copy of this document to physically form one document.

11.  **Entire Agreement.**  This Amendment sets forth the entire understanding and agreement of the parties hereto in relation to the subject matter hereof and supersedes any prior negotiations and agreements among the parties relative to such subject matter.  To the extent of any inconsistency between this Amendment and the Lease, the terms and conditions of this Amendment shall control and prevail.

4

12. **Force and Effect of Amendment.**  Except as hereby specifically amended, modified or supplemented herein, the Lease is hereby confirmed and ratified in all respects and shall remain in full force and effect according to its respective terms  This Amendment shall be binding upon and inure to the benefit of Landlord and Tenant and their respective successors and assigns.

13. **Defined Terms.**  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Lease.

14. **Recitals Incorporated.**  The foregoing recitals are hereby incorporated by this reference.

15. **Guaranty.**  It shall be a condition to Tenant's rights under this Amendment that CraftWorks Restaurant & Breweries Group, Inc. shall have executed and delivered to Landlord a guaranty of Tenant's obligations hereunder, which guaranty shall be in form and substance acceptable to Landlord in its sole discretion.

16. **No Brokers.**  Tenant represents and warrants that Tenant has dealt with no broker or agent in connection with this Amendment, and Tenant hereby indemnifies and holds harmless Landlord from any claims of any broker(s) in connection with this Amendment resulting from the actions of Tenant.  Landlord represents and warrants that Landlord has dealt with no broker or agent in connection with this Amendment, and Landlord hereby indemnifies and holds harmless Tenant from any claims of any broker(s) in connection with this Amendment resulting from the actions of Landlord.

17. **Tenant's Financial Statements.**  Both parties agree to execute a Confidentiality Agreement, which is made part of this First Amendment to Lease as Exhibit B. Tenant shall deliver to Landlord, on a quarterly basis, a summary of Tenant's profit and lost statement for the Premises. Tenant shall deliver to Landlord, on an annual basis, Guarantor's audited financials, which shall be certified by an officer of Tenant or a certified public accountant employed by Tenant and current within the immediately preceding twelve (12) month period.

[signatures appear on following page]

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be executed as of the date first written above.

<u>**LANDLORD**</u>:

**TOWER 111 BROADWAY, LLC**
a Delaware limited liability company

        By:    CA-TN, LLC, a Delaware limited liability company
        Its:    Sole Member

        By:    TOWER INVESTMENTS, LLC, a Delaware limited liability company
        Its:    Managing Member

                By:    Tower Investments, Inc., a California corporation
                Its:    Managing Member

                By:    _____
                Name:  Matt Maples
                Title:   S.V.P.

<u>**TENANT**</u>:

**GORDON BIERSCH BREWERY RESTAURANT GROUP, INC,**
a Tennessee corporation

By:    _____
Name:  John B. Phillips
Its:    General Counsel, SVP

**EXHIBIT A-1**
**Floor Plan**





EXHIBIT "A" ~ PAGE 2 OF 2

Future ELEVATOR

EXISTING AWNING & SCREEN

NEW SCREEN WALL

EDGE OF NEW AWNING ABOVE

HOLD NEW WALL BACK FROM FACADE UNLESS CONNECT TO STAIR.

2nd AVE

OPTIONAL STAIR CONNECTION

~ REFER. & STRUCTURE

1' 2' 4' 8'

AUGUST 27, 2012

111 BROADWAY ~ FOURTH FLOOR

BROADWAY ST.

**EXHIBIT B**
**Confidentiality Agreement**

## CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT (hereinafter the "Agreement") is made as of this ⟨21⟩ day of ⟨NOVEMBER⟩, 2012, by and between Gordon Biersch Brewery Restaurant Group, Inc., a Tennessee corporation with principal offices located at 201 W. Main Street, Suite 301, Chattanooga, Tennessee 37408 (hereinafter "Gordon Biersch"), and Tower 111 Broadway, LLC, (hereinafter "Recipient"). Gordon Biersch and Recipient are, unless otherwise herein specifically identified, a "Party," and they are, collectively, the "Parties."

WHEREAS, Gordon Biersch possess certain valuable proprietary information in the form of quarterly profit and loss statements and year-end audited financial statements (hereinafter "Confidential Information"); and

WHEREAS, Gordon Biersch has agreed to provide Recipient with Confidential Information solely for their review in connection with a lease between Gordon Biersch and Tower 111 Broadway, LLC., regarding property in Nashville, Tennessee (hereinafter "Lease");

NOW, THEREFORE, in consideration of Gordon Biersch disclosing Confidential Information to Recipient, Recipient agrees as follows:

1.     Confidentiality Obligations. Recipient agrees to treat the Confidential Information furnished to it by Gordon Biersch in accordance with the terms of this Agreement. Recipient shall use the Confidential Information only for the purpose of its own review in connection with the Lease. Recipient shall not disclose the Confidential Information to any third party, unless the third party and Gordon Biersch have signed a separate agreement.

2.     Compelled Disclosure. If Recipient becomes legally required to disclose the Confidential Information covered by this Agreement, Recipient shall give Gordon Biersch prompt notice of such fact so that Gordon Biersch may attempt to obtain a protective order or other appropriate remedy concerning any such disclosure. Recipient hereby agrees that it shall cooperate with Gordon Biersch's efforts to obtain any such protective order or other remedy. If any such order or other remedy does not fully preclude disclosure of the Confidential Information, or if Gordon Biersch waives compliance with the provisions of this Agreement, Recipient agrees that it will make such disclosure only to the extent as is legally required and will use its best efforts to have confidential treatment accorded the Confidential Information.

3.     Equitable Relief; Legal Fees. Recipient acknowledges that unauthorized disclosure or use of Confidential Information by Recipient may cause irreparable harm and may result in significant commercial damage to Gordon Biersch, and that such harm and damage may be difficult to ascertain. Therefore, Recipient agrees that Gordon Biersch shall be entitled, in addition to any and all other rights available at law, to equitable relief including injunction in the event of a breach or threatened breach of this Agreement. The prevailing Party in any legal action to enforce this Agreement shall be entitled to reimbursement of its attorneys' fees, court costs and expenses incurred in connection therewith.

4.     Term. Recipient shall continue to be bound by the terms and conditions of this Agreement while Recipient is in possession of the Confidential Information, as well as for a period of three (3) years after the return of the Confidential Information to Gordon Biersch.

5.     Return of Confidential Information. Upon the request of Gordon Biersch, all originals or copies of the Confidential Information shall be returned to Gordon Biersch and any notes, summaries or other material derived from such Confidential Information shall be destroyed. Upon Gordon Biersch's request, Recipient shall provide Gordon Biersch written certification as to its compliance with this paragraph 5.

6.     Severability. If any provision of this Agreement shall contravene or be invalid under the laws of any state, county or jurisdiction in which this Agreement shall be performed or enforced, then such contravention or invalidity shall not invalidate the entire Agreement. Such provision shall be deemed to be modified to the extent necessary to render it valid and enforceable, and if no such modification shall render it valid and enforceable, then

the Agreement shall be construed as if not containing the provisions held to be invalid, and the rights and obligations of the Parties shall be construed and enforced accordingly. This Agreement may not be assigned by Recipient without Gordon Biersch's prior written consent.

7.    Non-Disclosure. Without the prior written consent of Gordon Biersch, Recipient shall not disclose to any third party the fact that Confidential Information has been made available by Gordon Biersch to Recipient, unless the third party and Gordon Biersch have signed a separate agreement.

8.    Integration. This Agreement sets forth the entire agreement and understanding among the Parties with respect to the subject matter hereof, the purposes set forth herein and relating to any matter contained herein.

9.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Tennessee without regard to any law which would render such choice of law ineffective.

10.    Amendments. This Agreement may only be altered, modified or amended by a written instrument executed by each of Gordon Biersch and Recipient.

11.    Miscellaneous. Gordon Biersch agrees to provide Confidential Information to Recipient's prospective lenders or buyers upon request from Recipient and subject to said prospective lenders or buyers signing a separate Confidentiality Agreement.

IN WITNESS WHEREOF, Gordon Biersch and Recipient have executed this Agreement to be effective as of the date first above written.

**LANDLORD**:

**TOWER 111 BROADWAY, LLC**

By:    CA-TN, LLC, a Delaware limited liability company
Its:    Sole Member

By:    TOWER INVESTMENTS, LLC, a Delaware limited liability company
Its:    Managing Member

By:    Tower Investments, Inc., a California corporation
Its:    Managing Member

By:
Name:    Brett Marks
Title:    S.V.P.

**TENANT**:

**GORDON BIERSCH BREWERY RESTAURANT GROUP, INC,**
a Tennessee corporation

By:
Name:    John B Phillips
Its:    General Counsel, SVP

2

November *21*, 2012

## GUARANTY

CRAFTWORKS RESTAURANTS & BREWERIES GROUP, INC., a Delaware corporation ("Guarantor"), with an address of 201 West Main Street, Suite 301, Chattanooga, Tennessee 37408, in consideration of execution by TOWER 111 BROADWAY, LLC, a Delaware limited liability company ("Landlord") of that certain First Amendment to Lease (the "First Amendment"), of even date herewith, by and between Landlord and GORDON BIERSCH RESTAURANT GROUP, INC., a Tennessee corporation ("Tenant"), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees to Landlord the full and timely payment, performance and observance of all terms and conditions to be performed and/or observed by Tenant under that certain Lease dated as of September 19, 2002, by and between Tenant and Landlord's predecessor in interest (as amended by the First Amendment, the "Lease"), including but not limited to: (a) the full and prompt payment of all Base Rent, Common Area Maintenance Expenses, and any and all other sums payable by Tenant under the Lease, and Guarantor hereby agrees that if default shall at any time be made by Tenant in (i) the payment of any such Base Rent, Common Area Maintenance Expenses and/or other sums payable under the Lease, or (ii) the performance and observance of any of the other terms and conditions contained in the Lease. Guarantor shall in accordance with the terms of the Lease pay such Base Rent, Common Area Maintenance Expenses, and/or other sums (and any arrears of any of the same) to Landlord and shall perform and fulfill all of such terms and conditions of Tenant under the Lease, and shall pay to Landlord all damages that may arise in consequence of any default by Tenant under the Lease, including (without limitation) all reasonable attorneys' fees and disbursements paid incurred by Landlord in connection with any such default and/or in connection with the enforcement of this Guaranty, whether or not suit be brought (and if suit be brought, through all appellate actions and proceedings, if any).

This Guaranty is an absolute and unconditional Guaranty of payment and of performance. It shall be enforceable by Landlord, its legal representatives, successors or assigns against Guarantor, its successors and/or assigns, as the case may be, without the necessity for any suit or proceedings whatsoever against Tenant, and without the necessity of any notice of non-payment, non-performance, or non-observance or any notice of acceptance of this Guaranty or of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives, and Guarantor expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of the assertion, or the failure to assert, by Landlord against Tenant any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease, or any facts or circumstances arising therefrom (including, without limitation, the release of Tenant's liability under the Lease pursuant to any statute or court decision).

This Guaranty shall be a continuing Guaranty and the liability of Guarantor hereunder shall in no way be affected, modified, or diminished by reason of any assignment, renewal, modification or extension of the Lease or by reason of any modification or waiver of or change in any of the terms or conditions of the Lease or by reason of any extension of time that may be granted to Tenant, or by reason of any dealings or transactions or other matters or things occurring between Landlord and Tenant, whether or not notice thereof is given to Guarantor.

1

Guarantor consents and agrees that Landlord may, at any time and without notice to or further consent from Guarantor, and without releasing, discharging, modifying or otherwise affecting the obligations and liabilities of Guarantor in any manner, either with or without consideration: (a) grant releases, compromises, waivers of compliance and other indulgences with respect to the Lease and this Guaranty to any persons or entities now or hereafter liable under the Lease or the Guaranty, (b) release any other obligor under the Lease or this Guaranty, or (c) otherwise deal with Tenant, or any other person or entity, in all respects, or take or fail to take any action of any type.

This shall be an agreement of suretyship as well as guaranty and Guarantor's liabilities and obligations under this Guaranty shall be direct and immediate, not conditional or contingent upon the pursuit of any rights or remedies against Tenant or any other person or against securities or liens available to Landlord. Guarantor waives any right to require that an action be brought against Tenant or any other person or entity or to require that resort be had to any security. In the event of any default under the Lease, Landlord may enforce its rights and remedies provided under the Lease or this Guaranty, or under any other instruments relating to the Lease, in any order or not at all. All rights and remedies available to Landlord shall be nonexclusive and cumulative of all other rights and remedies provided under the Lease, or hereafter, or by law, in equity, or contract. All rights and remedies afforded to Landlord under this Guaranty shall be exercisable notwithstanding termination of the Lease or termination of Tenant's right to possession under the Lease because of Tenant's default.

To the extent permitted by law, Guarantor waives on account of its liability under this Guaranty: (a) any of its available rights, privileges and defenses under law for the relief of debtors, sureties or guarantors, (b) the benefits of all provisions of law to stay or delay execution or sale of property, and (c) other satisfaction of any judgment against Guarantor (or any one or more of them if more than one).

This Guaranty is governed by the laws of the State of Tennessee, without regard for its conflicts of laws principles.

This Guaranty shall not be impaired by any change arising by reason of Tenant's bankruptcy or dissolution.

No obligation of Guarantor can be released or waived by Landlord or any partner, agent or employee of Landlord, except by a writing signed and attested by the duly authorized representative or representatives of Landlord. This Guaranty is irrevocable until all amounts guaranteed have been completely paid and all obligations and undertakings of Guarantor have been completely performed.

Any notice or demand which by any provision of this Guaranty is required or allowed to any party shall have been sufficiently given when made in writing and either delivered personally or sent by certified or registered United States mail, Federal Express, express United States mail, or air courier, all postage or fees prepaid, addressed to the parties at the addresses set in the Lease or to another address furnished in writing. Unless otherwise provided, Guarantor's address, for purposes of notice, shall be the same as that for Tenant.

2

This Guaranty is binding upon Guarantor and its successors, legal representatives and assigns, and inures to the benefit of Landlord, its successors and assigns.

GUARANTOR:

CRAFTWORKS RESTAURANTS & BREWERIES GROUP, INC., a Delaware corporation

By: _____
Name: John B. Phillips
Its: General Counsel, SVP

3

## SECOND AMENDMENT TO LEASE

THIS SECOND AMENDMENT TO LEASE is made and entered into this 7th day of February, 2013 by and between **TOWER 111 BROADWAY, LLC**, a Delaware limited liability company (the "Landlord") and **BIG RIVER BREWERIES, INC.**, a Tennessee corporation (the "Tenant").

### RECITALS:

A.      **WHEREAS,** Landlord and Tenant are parties to that certain Lease dated September 19, 2002 (as amended, the "Lease") pursuant to which the Tenant leases a portion of the real property within the Building located at 111 Broadway, Nashville, Tennessee, as more particularly described in Lease (the "Premises).

B.      **WHEREAS,** The Lease has been amended by the First Amendment to Lease dated November 21, 2012.

**NOW, THEREFORE,** for valuable consideration, the receipt and sufficiency of which are mutually acknowledged, the parties agree as follows:

1.      **Tenant's Name:** Pursuant to the First Amendment to Lease, Tenant's name, as stated in the first paragraph, shall be deleted in its entirety and replaced with "BIG RIVER BREWERIES, INC., a Tennessee corporation".

2.      **Penthouse Address:** The physical address, in reference to the Penthouse, shall be as follows:

> 111 Broadway
> Suite 400
> Nashville, TN 37201

3.      **Entire Agreement:** Except as provided in this Second Amendment, all of the terms and conditions of the Lease shall remain in full force and effect. This Amendment sets forth the entire understanding and agreement of the parties hereto in relation to the subject matter hereof and supersedes any prior negotiations and agreements among the parties relative to such subject matter. To the extent of any inconsistency between this Amendment and the Lease, the terms and conditions of this Amendment shall control and prevail.

**IN WITNESS WHEREOF,** the parties have caused this Amendment to be executed as of the date first written above.

**LANDLORD:**
**TOWER 111 BROADWAY, LLC**
a Delaware limited liability company

By: _____
Name: _ALEX MARKES_
Title: _SVP_

**TENANT:**
**BIG RIVER BREWERIES, INC.**
a Tennessee corporation

By: _____
Name: _John A. Leonard_
Title: _VP, Design + Construction_

4202-RB
Nashville, TN

## THIRD AMENDMENT TO LEASE

THIS THIRD AMENDMENT TO LEASE (this "Amendment") is made and entered into this _24th_ day of _March_, 2016 ("Effective Date"), by and between TOWER 111 BROADWAY, LLC, a Delaware limited liability company ("Landlord"), and GORDON BIERSCH BREWERY RESTAURANT GROUP, INC., a Tennessee corporation ("Tenant")

RECITALS:

A.      On September 19, 2002, Tenant and De Montbrun – Park Holdings, LLC, a Tennessee limited liability company ("Original Landlord") entered into that certain Lease (the "Original Lease") for space within the Building located at 111 Broadway, Nashville, Tennessee as more particularly described in the Lease.

B.      On February 1, 2006, Original Landlord sold the Building and assigned the Lease to Landlord.

C.      By First Amendment to Lease (the "First Amendment"), dated as of November 21, 2012, Landlord and Tenant amended the Original Lease in certain respects (the Original Lease, as amended by the First Amendment, hereinafter referred to as the "Lease"), and Tenant further agreed to reimburse Landlord for certain costs in connection with the construction of an Elevator (as defined in the First Amendment) in the Building.

D.      Landlord has constructed and installed the elevator, and Landlord and Tenant desire to further amend the Lease as set forth in this Amendment.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, the Lease is hereby amended on the terms and condition hereinafter set forth, and Landlord and Tenant hereby agree as follows:

1.      **Premises.**  Effective as of February 1, 2016, Section 1.1(j) of the Lease is hereby deleted in its entirety and replaced with the following:

"The Premises shall be a total of 26,222 square feet of space within the Building, compromised of the basement and first floor level (consisting of 18,157 square feet), penthouse (consisting of 3,255 square feet), and a portion of the second floor level of the building (consisting of 4,810 square feet), together with a right of first refusal for any outdoor seating area along Basin Alley, as more particularly shown by hatching on the floor plan diagrams attached to this Amendment as **Exhibit A-1**."

2.      **Base Rent.**  Effective as of February 1, 2016, Section 1.1(a) of the Lease is hereby deleted in its entirety and replaced with the following:

[Balance of Page Intentionally Left Blank]

4202-RB
Nashville, TN

| Lease Year | Date Range | Area | Annual Base Rent | PSF |
|---|---|---|---|---|
| Effective Date – Year 5 | 2/1/2016 – 12/31/2017 | Basement & 1st Floor<br>2nd Floor<br>Penthouse | $281,433.50<br>$87,349.60<br>$135,147.60 | $15.50<br>$18.16<br>$41.52 |
| Years 6-10 | 1/1/2018 – 12/31/2022 | Basement & 1st Floor<br>2nd Floor<br>Penthouse | $323,739.31<br>$96,103.80<br>$148,655.85 | $17.83<br>$19.98<br>$45.67 |
| 1st Option Period | 1/1/2023 – 12/31/2027 | Basement & 1st Floor<br>2nd Floor<br>Penthouse | $372,400.07<br>$105,723.80<br>$163,531.20 | $20.51<br>$21.98<br>$50.24 |
| 2nd Option Period | 1/1/2028 – 12/31/2032 | Basement & 1st Floor<br>2nd Floor<br>Penthouse | $428,323.63<br>$116,305.80<br>$179,871.30 | $23.59<br>$24.18<br>$55.26 |

3.    **Tenant's Proportionate Share**. Section 1.1(n) of the Lease is hereby deleted in its entirety and replaced with the following:

"Tenant's Proportionate Share shall mean the ratio of the rentable area of the Premises to the total amount of rentable area in the Building, and such percentage is acknowledged to be fifty two and one half percent (52.5%). Notwithstanding the foregoing, until such time as a third party tenant takes occupancy of any currently vacant space on the second floor and/or third floors of the Building, Tenant's Proportionate Share with respect to such vacant areas shall be deemed to be one hundred percent (100%).

4.    **Tenant's Obligation to Reimburse Landlord**.  Tenant hereby reaffirms its obligation to pay Landlord for Tenant's Proportionate Share of the actual, out of pocked costs incurred by Landlord in connection with the construction and installation of the Elevator, which shall be paid by Tenant to Landlord on or before March 25, 2016; provided, however, that Tenant's Proportionate Share of such costs shall not exceed $400,000.00 in accordance with the terms of the Lease.  As set forth in the Lease, "Tenant will not be responsible for any cost exceeding $400,000.00, which shall include the repair and replacement of finishes inside the Premises damaged by such installation.

5.    **Tenant Estoppel**. Tenant hereby represents and warrants to Landlord as of the Effective Date that:

(a)    the Lease is in full force and effect;

(b)    the Lease has not been modified or amended, except as provided herein, and is enforceable in accordance with its terms; and

(c)    Landlord is not in default under the Lease nor, to Tenant's actual knowledge (without inquiry or investigation), has Landlord failed to duly and fully perform or observe any term,

4202-RB
Nashville, TN

covenant or condition by it to be performed under the Lease which would, but for the existence of any applicable notice and/or grace period, constitute a default under the Lease.

      6.    **Landlord Estoppel.** Landlord hereby represents and warrants to Tenant as of the Effective Date that:

      (a)    the Lease is in full force and effect;

      (b)    the Lease has not been modified or amended, except as provided herein, and is enforceable in accordance with its terms, and;

      (c)    Tenant is not in default under the Lease nor, to Landlord's actual knowledge (without inquiry or investigation), has Tenant failed to duly perform or observe any term, covenant or condition by it to be performed under the Lease which would, but for the existence of any applicable notice and/or grace period, constitute a default under the Lease.

      7.    **Notices.** Any notice or document required to be given pursuant to Section 17.1 of the Lease shall be sent to either Landlord or Tenant at the addresses designated below:

| | |
|---|---|
| Landlord's Mailing Address: | Tower 111 Broadway, LLC<br>250 W. Main Street, Suite 101<br>Woodland, CA 95695<br>Attention: John Pierce |
| Tenant's Mailing Address: | c/o CraftWorks Restaurants & Breweries Group, Inc.<br>8001 Arista Place, Suite 500<br>Broomfield, Colorado 80021<br>Attention: Leasing Department |
| Tenant's Address for Rent and other Invoices: | c/o CraftWorks Restaurants & Breweries Group, Inc.<br>201 Main Street, Suite 301<br>Chattanooga, TN 37408<br>Attention: Accounts Payable |

      8.    **Counterparts.** This Amendment may be executed by facsimile and delivered in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument. Signature and acknowledgement pages, if any, may be detached from the counterparts and attached to a single copy of this document to physically form one document.

      9.    **Force and Effect of Amendment**. Except as hereby specifically amended, modified or supplemented herein, the Lease is hereby confirmed and ratified in all respects and shall remain in full force and effect according to its respective terms. This Amendment shall be binding upon and inure to the benefit of Landlord and Tenant and their respective successors and assigns.

      10.    **Defined Terms**. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Lease.

      11.    **Recitals Incorporated**. The foregoing recitals are hereby incorporated by this reference.

4202-RB
Nashville, TN

IN WITNESS WHEREOF, Landlord and Tenant have caused this Third Amendment to Lease to be executed effective as of the day and year first above written.

LANDLORD:

TENANT:

**TOWER 111 BROADWAY, LLC,**
a Delaware limited liability company

By:     CA-TN, LLC
Its:     Sole Member

By:     Tower Investments, LLC
Its:     Managing Member

By:     Tower Investments, Inc.
Its:     Manager

By:     _____
Name:  STEPHEN MARKS, JR.
Its:     Secretary JVD
Date:  MARCH 22, 2016

**GORDON BIERSCH BREWERY RESTAURANT GROUP, INC.,**
a Tennessee corporation

By:     _____
Name:  Mike Mrlik
Its:     Vice President
Date:  March 24, 2016


## CONSENT AND JOINDER OF GUARANTOR

CraftWorks Restaurants and Breweries Group, Inc., a Delaware corporation, as Guarantor of the Lease, hereby joins in the execution of this Amendment for the purpose of consenting to the terms and conditions hereof.

GUARANTOR:

**CRAFTWORKS RESTAURANTS & BREWERIES GROUP, INC.,**
a Delaware corporation

By:     _____
Name:  Mike Mrlik
Its:     Vice President
Date:  March 24, 2016

## FOURTH AMENDMENT TO LEASE

THIS FOURTH AMENDMENT TO LEASE (this "Amendment") is made and entered into this 7th day of ~~October~~ November, 2016 ("Effective Date"), by and between **TOWER 111 BROADWAY, LLC**, a Delaware limited liability company ("Landlord"), and **GORDON BIERSCH BREWERY RESTAURANT GROUP, INC.**, a Tennessee corporation ("Tenant").

### RECITALS:

A.    Effective as of September 19, 2002, Tenant and De Montbrun – Park Holdings, LLC, predecessor in interest to Landlord, entered into that certain Lease, as amended by that certain First Amendment to Lease, dated as of November 21, 2012, as further amended by that certain Second Amendment to Lease, dated as of February 7, 2013, and as further amended by that certain Third Amendment to Lease (the "Third Amendment"), dated March 24th, 2016 (as amended, the "Lease") for space within the Building located at 111 Broadway, Nashville, Tennessee as more particularly described in the Lease.

A.    Landlord and Tenant desire to further amend the Lease as set forth in this Amendment.

**NOW THEREFORE,** in consideration of the mutual covenants set forth herein, the Lease is hereby amended on the terms and condition hereinafter set forth, and Landlord and Tenant hereby agree as follows:

1.    **Premises.** Effective as of November 1, 2016, Section 1.1(j) of the Lease is hereby deleted in its entirety and replaced with the following to remove the 4,810 square foot portion of the second-floor level ("2nd Floor Space") from the Premises:

"The Premises shall be a total of 21,412 square feet of space within the Building, comprised of the basement and first floor level (consisting of 18,157 square feet) and penthouse (consisting of 3,255 square feet), together with a right of first refusal for any outdoor seating area along Basin Alley, as more particularly shown by hatching on the floor plan diagrams attached to the Third Amendment as **Exhibit A-1**."

2.    **Floor Plan.** Effective as of November 1, 2016, all depictions of the 2nd Floor Space are hereby deleted from **Exhibit A-1** to the First Amendment to the Lease.

3.    **Base Rent**. Effective as of November 1, 2016, Section 1.1(a) of the Lease is hereby deleted in its entirety and replaced with the following:

[Balance of Page Intentionally Left Blank]

| Lease Year | Date Range | Area | Annual Base Rent | PSF |
|---|---|---|---|---|
| 11/1/2016 – Year 5 | 11/1/2016 – 12/31/2017 | Basement & 1st Floor | $281,433.50 | $15.50 |
| | | Penthouse | $135,147.60 | $41.52 |
| Years 6-10 | 1/1/2018 – 12/31/2022 | Basement & 1st Floor | $323,739.31 | $17.83 |
| | | Penthouse | $148,655.85 | $45.67 |
| 1st Option Period | 1/1/2023 – 12/31/2027 | Basement & 1st Floor | $372,400.07 | $20.51 |
| | | Penthouse | $163,531.20 | $50.24 |
| 2nd Option Period | 1/1/2028 – 12/31/2032 | Basement & 1st Floor | $428,323.63 | $23.59 |
| | | Penthouse | $179,871.30 | $55.26 |

4.      **Tenant's Proportionate Share**. Section 1.1(n) of the Lease is hereby deleted in its entirety and replaced with the following:

"Tenant's Proportionate Share shall mean the ratio of the rentable area of the Premises to the total amount of rentable area in the Building, and such percentage is acknowledged to be forty two and eighty seven one hundredths percent (42.87%). Notwithstanding the foregoing, until such time as a third party tenant takes occupancy of any currently vacant space on the third floors of the Building, Tenant's Proportionate Share with respect to such vacant areas shall be deemed to be one hundred percent (100%)."

5.      **Tenant Estoppel**. Tenant hereby represents and warrants to Landlord as of the Effective Date that:

(a)      the Lease is in full force and effect;

(b)      the Lease has not been modified or amended, except as provided herein, and is enforceable in accordance with its terms; and

(c)      Landlord is not in default under the Lease nor, to Tenant's actual knowledge (without inquiry or investigation), has Landlord failed to duly and fully perform or observe any term, covenant or condition by it to be performed under the Lease which would, but for the existence of any applicable notice and/or grace period, constitute a default under the Lease.

6.      **Landlord Estoppel**. Landlord hereby represents and warrants to Tenant as of the Effective Date that:

(a)      the Lease is in full force and effect;

(b)      the Lease has not been modified or amended, except as provided herein, and is enforceable in accordance with its terms, and;

(c)      Tenant is not in default under the Lease nor, to Landlord's actual knowledge (without inquiry or investigation), has Tenant failed to duly perform or observe any term, covenant or condition by it to be performed under the Lease which would, but for the existence of any applicable notice and/or grace period, constitute a default under the Lease.

7.      **Counterparts**. This Amendment may be executed by facsimile and delivered in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument. Signature and acknowledgement pages, if any, may be detached from the counterparts and attached to a single copy of this document to physically form one document.

8.      **Force and Effect of Amendment**. Except as hereby specifically amended, modified or supplemented herein, the Lease is hereby confirmed and ratified in all respects and shall remain in full force and effect according to its respective terms. This Amendment shall be binding upon and inure to the benefit of Landlord and Tenant and their respective successors and assigns.

9.      **Defined Terms**. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Lease.

10.     **Recitals Incorporated**. The foregoing recitals are hereby incorporated by this reference.

[signatures appear on following page]

**IN WITNESS WHEREOF,** Landlord and Tenant have caused this Fourth Amendment to Lease to be executed effective as of the day and year first above written.

LANDLORD:

**TOWER 111 BROADWAY, LLC,** a
Delaware limited liability company

By:   DM Libby Properties, LLC
Its:   Sole Member

By: _____
       David Marks, its Sole Member

TENANT:

**GORDON BIERSCH BREWERY
RESTAURANT GROUP, INC.,** a
Tennessee corporation

By:     _____
Name:   MIKE MZLIK
Its:    PRESIDENT

## CONSENT AND JOINDER OF GUARANTOR

CraftWorks Restaurants and Breweries Group, Inc., a Delaware corporation, as Guarantor of the Lease, hereby joins in the execution of this Amendment for the purpose of consenting to the terms and conditions hereof.

GUARANTOR:

**CRAFTWORKS RESTAURANTS &
BREWERIES GROUP, INC.,** a
Delaware corporation

By:     _____
Name:   MIKE MZLIK
Its:    PRESIDENT