**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| **CRAFTWORKS PARENT, LLC, *et al.*,** | : | **Case No. 20-10475 (BLS)** |
| **Debtors.**[1] | : | **(Jointly Administered)** |

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES; AND (II) GRANTING RELATED RELIEF**

CraftWorks Parent, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the Official Committee of Unsecured Creditors (the "Committee") respectfully and jointly submit this motion to dismiss the Chapter 11 Cases (the "Motion") and state as follows:

## PRELIMINARY STATEMENT

1. The Debtors commenced the Chapter 11 Cases to preserve their business as a going concern and maximize the value of their assets through the sale of substantially all of their assets. Even after weathering the crisis caused by COVID-19, the Debtors achieved that goal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Big River Breweries, Inc. (6292); Brew Moon Colorado, Inc. (5001); Chophouse License, LLC (2340); Craft Brewery Holding, Inc. (1228); CraftWorks Holdings, LLC (7163); CraftWorks Intermediate Co, LLC (9810); CraftWorks Parent, LLC (3345); CraftWorks Restaurants & Breweries Group, Inc. (4820); CraftWorks Restaurants & Breweries, Inc. (2504); CraftWorks Restaurants & Breweries, LLC (0676); GB Acquisition, Inc. (5175); GB Franchise, LLC (7716); GB Kansas, LLC (0924); GB Maryland, Inc. (6439); GB Parent, Inc. (1281); GBBR Texas, Inc. (9904); Gordon Biersch Brewery Restaurant Group, Inc. (8023); Harbor East Brewery, LLC (7759); Logan's Restaurants, Inc. (9987); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Kansas, Inc. (8716); Logan's Roadhouse of Texas, Inc. (2372); LRI Holdings, Inc. (4571); Old Chicago Franchising LLC (7249); Old Chicago of Colorado, Inc. (4857); Old Chicago of Kansas, Inc. (0606); Old Chicago Oregon, LLC (5083); Old Chicago Parker Crossing, Inc. (9218); Old Chicago Taproom, LLC (5838); Old Chicago Westminster, Inc. (5759); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); Rock Bottom Arizona, Inc. (4848); Rock Bottom License, LLC (9033); Rock Bottom of Minneapolis, Inc. (5762); Wadsworth Old Chicago, Inc. (4849); Walnut Brewery, Inc. (7405). The Debtors' mailing address is 2981 Sidco Drive, Nashville, TN 37204.

when, on May 25, 2020, the Court entered that certain *Order (I) Authorizing and Approving Semi-Private Sale of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (III) Granting Related Relief* [Docket No. 540] (the "Sale Order"), and on June 1, 2020, the Debtors successfully closed the sale of substantially all of their assets (the "Sale").

2. After carefully considering alternatives, the Debtors and the Committee have decided that a dismissal of the Chapter 11 Cases is the most efficient and cost-effective method of concluding these Chapter 11 Cases. Confirmation of a plan of liquidation will be lengthy, expensive, and, under the circumstances, likely not be feasible. Conversion to a case under chapter 7 of the Bankruptcy Code (as hereafter defined) will merely add another layer of administrative costs with minimal attendant benefits. There is minimal activity left to be done in these Chapter 11 Cases, as nearly all claims and causes of action belonging to the estates, including avoidance actions under chapter 5 of the Bankruptcy Code, derivative claims, and any claims and causes of action against any current or former officers, directors, or shareholders other than certain Excluded Claims (as defined in the APA), have been sold to Buyer or otherwise released. The only claims and causes of action belonging to the estates that were excluded from the sale–the Excluded Claims–were a narrow universe of claims against two certain former officers for improper payment of sales taxes in violation of the DIP Order.[2] As a result, there are no remaining claims or causes of action for the Debtors to pursue and next to no remaining assets for a chapter 7 trustee to liquidate and distribute. As discussed below, a dismissal is authorized by the

[2] The Debtors settled such claims against one former officer. *See Order (A) Approving the Settlement By and Between Debtors and Hazem Ouf and (B) Granting Related Relief* [Docket No. 657]. The Debtors are still negotiating settlement terms regarding certain claims against the other former officer.

Bankruptcy Code (as hereafter defined) and makes the most practical and economic sense given the circumstances of these Chapter 11 Cases. The Debtors settled such claims against one former officer.

3. In connection with the dismissal, the Debtors will not make any distributions to creditors, administrative or otherwise provided by order of this Court. Any remaining assets of the Debtors will be used to effectuate the wind down of the Debtors' Chapter 11 Cases and affairs, and to the extent any excess funds remain, such funds revert to Buyer (as defined below) under the APA (as defined below). Upon dismissal, the Debtors intend to file an Assignment for the Benefit of Creditors (an "ABC") pursuant to 10 Del. Code § 7381, *et seq.* for the Debtors incorporated under Delaware law, and commence applicable state dissolution processes for any Debtors not incorporated under Delaware law.

## RELIEF REQUESTED

4. Pursuant to sections 105(a), 305(a), 349, and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1017-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors and Committee seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (a) approving procedures for the filing and approval of Final Fee Applications (as defined below); (b) relieving Prime Clerk, LLC ("Prime Clerk") of its responsibilities as Claims and Noticing Agent; (c) notwithstanding section 349 of the Bankruptcy Code, providing that all prior orders, stipulations, settlement, rulings, orders and judgments of the Court made during the course of these Chapter 11 Cases are in full force and effect and otherwise unaffected by the dismissal of these Chapter 11 Cases; (d) terminating the

retention of professionals employed in these Chapter 11 Cases pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "Professionals"); and (e) authorizing the Debtors to take all reasonably necessary steps to dissolve and/or terminate under applicable state law.

## JURISDICTION AND VENUE

5. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6. Pursuant to Rule 7008 of the Bankruptcy Rules and Rule 9013-1(f) of the Local Rules, the Debtors and the Committee consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A. General Background

7. On March 3, 2020 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases have been jointly consolidated for administrative purposes only.

8. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 12, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. No trustee or examiner has been appointed in the Chapter 11 Cases.

9. As of the Petition Date, the Debtors were the nation's leading operator and franchisor of brewery and craft-beer focused casual dining restaurants with over 330 locations in 39 States and the District of Columbia and abroad in Taiwan.[3] The Debtors employed more than 18,000 team members and corporate and other support staff, including at its restaurants nationwide and at offices located in Nashville, Tennessee and Broomfield, Colorado.

10. Additional information regarding the Debtors, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Hazem Ouf in Support of Chapter 11 Petitions and First Day Pleadings*, filed on March 3, 2020 [Docket No. 17] (the "First Day Declaration"), and such First Day Declaration is incorporated herein by reference.

**B. Sale under the Asset Purchase Agreement**

11. On May 25, 2020, the Court entered the Sale Order approving the Sale pursuant to that certain Asset Purchase Agreement, dated as of May 4, 2020 (as amended, modified, and/or supplemented from time to time, the "APA").[4] The Court has also entered supplemental sale orders resolving objections by certain landlords and contract counterparties. *See Supplement to Order (I) Authorizing and Approving Semi-Private Sale of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (III) Granting Related Relief* [Docket No. 559] and *Second Supplement to Order (I) Authorizing and Approving Semi-Private Sale of Debtors' Assets Free and Clear of All Liens,*

---

[3] Approximately 261 of the Debtors' restaurants were leased and approximately 77 were franchised.

[4] A copy of the APA was attached as **Exhibit 1** to the *Debtors' Motion for an Order (I) Authorizing and Approving Semi-Private Sale of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (III) Granting Related Relief* [Docket No. 336].

*Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (III) Granting Related Relief* [Docket No. 586].

12. Consistent with the terms of the APA, the Debtors and the Buyer have concluded the process of assuming and assigning unexpired leases of nonresidential real property. The Debtors have assumed and assigned or rejected all of their leases of nonresidential real property.[5] In addition, none of the Debtors' employees remain employed by the Debtors (many of whom are now employed by Buyer).

**C. The Debtors' Remaining Assets and Liabilities**

13. Pursuant to the APA, the Buyer has assumed a significant amount of liabilities not otherwise paid or provided for under the Debtors' DIP financing budget under that certain *Final Order: (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Status; (III) Authorizing the Use of Cash Collateral; (IV) Granting Adequate Protection to Prepetition Secured Parties; and (V) Granting Related Relief* [Docket No. 535] (the "Final DIP Order").

14. In addition, nearly all claims and causes of action belonging to the estates, including avoidance actions under chapter 5 of the Bankruptcy Code, derivative claims, and any claims and causes of action against any current or former officers, directors, or shareholders other than certain Excluded Claims, have been sold to Buyer or otherwise released. The only claims and causes of action belonging to the estates that were excluded from the sale—the Excluded

[5] The Debtors intend to assign the final lease of nonresidential real property in connection with that certain *Motion to Authorize Debtors' Motion for an Order (I) Authorizing and Approving Private Sale of Membership Interests of Logan's Roadhouse, Inc. in Martins BBQ West End LLC, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Assumption and Assignment of Unexpired Leases Related Thereto; and (III) Granting Related Relief* [Docket No. 642], to which no objections were filed.

Claims—were a narrow universe of claims against two certain former officers for improper payment of sale taxes in violation of the DIP Order.[6] Moreover, the Sale Order contemplated that the Committee would have thirty (30) days to undertake an investigation (the "Investigation") into potential claims against the Debtors' past and current officers, directors, and shareholders, as well as any preferential transfers to any insiders under section 547(b) of the Bankruptcy Code, and, to the extent the Committee believed any such claim existed, to file a standing motion during such time to pursue such claim(s). After a thorough Investigation, the Committee has concluded not to pursue any such claims or causes of action, which resulted in the indefeasible sale of such claims and causes of action to Buyer. As a result, there are no remaining claims or causes of action for the Debtors to pursue and next to no remaining assets for a chapter 7 trustee to liquidate and distribute.

15. The Debtors' remaining assets consist of (a) Wind Down Cash, Existing Escrows and the Funded Reserve Account (each as defined in the APA) to be used to wind down the Debtors' affairs after the closing of the Sale, and (b) any residual interest in utility deposits for closed restaurants not yet returned to the Debtors that they are entitled to receive after final reconciliation of amounts owed postpetition to the applicable utility company (together, the "Remaining Assets").[7]

---

[6] The Debtors settled such claims against one former officer. *See Order (A) Approving the Settlement By and Between Debtors and Hazem Ouf and (B) Granting Related Relief* [Docket No. 657]. The Debtors are still negotiating settlement terms regarding certain claims against the other former officer.

[7] Pursuant to the APA, any excess funds remaining in the Wind Down Cash account, Existing Escrows and Funded Reserve Account after the wind down of the Debtors' affairs reverts to the Buyer. Thus, a chapter 7 trustee would not be able to administer such funds to the Debtors' creditors.

## BASIS FOR RELIEF

### A. Dismissal is in the Best Interests of Creditors and the Debtors' Estates.

16. Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).

17. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion and dismissal from permissive to mandatory.[8] *See* H.R. Rep. No. 109-31(I), at 442, *reprinted in* 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see also Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

18. The amendments to section 1112 of the Bankruptcy Code limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. *In re 3 Ram,*

---

[8] Prior to BAPCPA, a bankruptcy court had wide discretion to use its equitable powers to dispose of a debtor's case but was not mandated to dismiss a case if cause were shown. H.R. Rep. No. 95-595, at 405 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787*; see also Small Bus. Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that determination of whether cause exists under § 1112(b) "rests in the sound discretion" of the bankruptcy court); *Koerner v. Colonial Bank (In re Koerner)*, 800 F.2d 1358, 1367 n.7 (5th Cir. 1986) (stating that bankruptcy court is afforded "wide discretion" under section 1112(b)).

*Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007).

19. Section 1112(b)(4) of the Bankruptcy Code outlines a non-exhaustive list of sixteen (16) grounds constituting "cause" for dismissal of a chapter 11 case. 11 U.S.C. § 1112(b). One such ground is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," *Id.* § 1112(b)(4)(A), which courts have interpreted to refer to the "debtor's ability to restore the viability of its business." *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) (citations omitted).

20. In addition to the non-exhaustive list outlined by section 1112(b)(4), courts may consider the "totality of the circumstances" in determining whether sufficient cause exists. *See In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (the factors enumerated in section 1112(b)(4) are "not exhaustive and . . . a court may consider whether other facts and circumstances qualify as 'cause.'").

21. Courts may find sufficient cause if a debtor is unable to "effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161–62 n.10 (3d Cir. 2012) ("[T]he 'inability to effectuate a plan' remains a viable basis for dismissal[.]"); *see also Bronson v. Thompson (In re Bronson)*, Nos. AZ-12-1320-MkDJu, 08-00777, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should . . . dismiss or convert."). Inability to effectuate a plan arises when a debtor lacks the

capacity to "formulate a plan or carry one out" or where the core for a workable plan of reorganization does not exist. *Preferred Door*, 990 F.2d at 549 (citing *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989)).

22. Here, the Debtors experienced substantial diminution in the value of their estates and incurred overwhelming administrative expenses. *Preferred Door*, 990 F.2d at 549; *Loop Corp.*, 379 F.3d at 516 ("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors. That is enough to satisfy the first element of [section 1112(b)(4)(A) of the Bankruptcy Code]."). Further, the Debtors have no "reasonable likelihood of rehabilitation" because the Debtors liquidated substantially all of their assets through the Sale, leaving no business left to reorganize. *Loop Corp.*, 379 F.3d at 516 ("Because the debtors here intended to liquidate their assets rather than restore their business operations, they had no reasonable likelihood of rehabilitation.").

23. The Debtors cannot confirm a plan of liquidation because the Remaining Assets are insufficient to pay all administrative and priority claims in full as required by section 1129(a)(9) of the Bankruptcy Code. Thus, there is no point in incurring additional administrative expenses when the Debtors are unable to consummate a plan of liquidation.

24. With deference to the Court, the Debtors and Committee believe that they have met their burden of establishing cause under section 1112(b). The Chapter 11 Cases should be dismissed due to the continuing diminution in value of the Debtors' estates, the absence of a reasonable likelihood of rehabilitation, and the fact that a plan of liquidation is not feasible under these circumstances.

**B. Dismissal is in the Best Interests of Creditors and the Debtors' Estates.**

25. Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court should evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and the estate. 11 U.S.C. § 1112(b); *see, e.g.*, *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995).

26. Courts consider a variety of factors in determining whether to dismiss or convert, including:

(a) whether some creditors received preferential payments, and whether equality of distribution is better served by conversion rather than dismissal;

(b) whether there would be a loss of rights granted if the case were dismissed;

(c) whether the debtor would simply file a further case upon dismissal;

(d) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

(e) in assessing the interest of the estate, whether conversion or dismissal maximizes the estate's value as an economic enterprise;

(f) whether any remaining issues would be better resolved outside of the bankruptcy forum;

(g) whether the estate consists of a "single asset";

(h) whether the debtor engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

(i) whether a plan has been confirmed and whether any property remains in the estate to be administered; and

(j) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*See, e.g.*, *In re Ramallo Bros. Printing, Inc.*, No. 14-01948, 2015 WL 3862970, at *2 (Bankr. D.P.R. June 22, 2015) (citing *In re Costa Bonita Beach Resort*, 513 B.R. 184 (Bankr. D.P.R. 2014)); *In re Helmers*, 361 B.R. 190, 195 (Bankr. D. Kan. 2007).

27. Here, the above factors weigh strongly in favor of dismissal. First, the Debtors will not file a further bankruptcy case upon dismissal, as the Debtors intend to wind down their affairs through a Delaware ABC or other state dissolution processes, as applicable. Second, there are virtually no assets for a chapter 7 trustee to administer or pursue. The Debtors liquidated substantially all of their assets in connection with the Sale, which assets were subject to the perfected liens of their prepetition lender. A chapter 7 trustee would therefore incur administrative expenses that in all likelihood have no source of repayment, adding an additional layer of administrative expenses without any attendant benefit. Claims and causes of actions have been sold to the Buyer now that the Committee has completed its Investigation and decided not to pursue any causes of action. Third, dismissal maximizes the estates' value as an economic enterprise by minimizing the costs of winding down the Debtors' affairs. Fourth, there are no allegations of misconduct or bad faith justifying the need for a chapter 7 trustee, especially following the Investigation. Fifth, as noted, there is only a *de minimis* amount of property of the Debtors' estates available to be administered, and certain excess funds after the Debtors wind down their affairs reverts to Buyer. Finally, there are no environmental, safety or other special concerns warranting a chapter 7 trustee.

28. It is in the best interest of the estates and creditors to dismiss the Chapter 11 Cases. Dismissal eliminates the continued accrual of any administrative expense obligations and brings closure to these Chapter 11 Cases in a timely and efficient manner. As such, the Debtors

and the Committee have met their burden of showing "cause" exists to dismiss, rather than convert, these Chapter 11 Cases under section 1112(b) of the Bankruptcy Code.

**C. In the Alternative, Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a) of the Bankruptcy Code.**

29. In the alternative, cause exists to dismiss the Chapter 11 Cases pursuant to section 305(a) of the Bankruptcy Code. Section 305(a) permits dismissal at any time if "the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). Dismissal under section 305(a) requires that both creditors and the debtor benefit from the dismissal, rather than applying a simple balancing test to determine whether dismissal is appropriate. *See In re Globao Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (Bankr. S.D.N.Y. 2004) (citing *In re Eastman*, 188 B.R. 621 (9th Cir. B.A.P. 1995)).

30. Dismissal pursuant to section 305(a) is appropriate where the court finds that both creditors and the debtor would be better served by dismissal. *In re AMC Investors, LLC*, 406 B.R. 478, 487–88 (Bankr. D. Del. 2009). Dismissal under this provision is determined on a case-by-case basis and rests in the sound discretion of the court. *In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered, including: (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *AMC Investors*, 406 B.R. at 488.

31. As described above, cause exists for dismissal. The Debtors have sold substantially all of their assets and are unable to confirm a plan of liquidation. Conversion imposes additional administrative costs with little to no corresponding benefit to the Debtors' estates or

their creditors. Dismissal provides the most efficient, cost-effective method of effectuating the wind down of the Debtors' estates.

**D. The Court Should Grant the Related Relief**

(1) The Court Should Approve Procedures for Final Fee Applications

32. The Debtors request that the Court schedule a final omnibus fee hearing (the "Final Fee Hearing") after a hearing on this Motion. The Debtors further request that the Court establish a deadline for the submission of final fee applications ("Final Fee Applications") for fees incurred by professionals ("Professional Fees") from the Petition Date up to and including the date these Chapter 11 Cases are dismissed (the "Dismissal Date"), as well as an objection deadline thereto.

33. To the extent there are any unused funds remaining in the Funded Reserve Account and/or Existing Escrows after the Final Fee Applications have been heard and allowed Professional Fees have been paid from the Funded Reserve Account and/or Existing Escrows, the Debtors request authority to further reserve such funds, in addition to amounts in the Wind Down Reserve, to fund the ABC and the wind down of the Debtors' affairs under applicable state law.

(2) The Court Should Provide For Continued Binding Effect of Prior Stipulations, Settlements, Rulings, Orders and Judgments

34. The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. *See* 11 U.S.C. § 349(b). A bankruptcy court may, however, "for cause, order[] otherwise . . . ." *Id.* Courts in this jurisdiction have regularly allowed orders to be given continued effect after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See, e.g.*, *In re Fuse Media, Inc.*, Case No. 19-10870 (KG) (Bankr. D. Del. July 19, 2019) (giving continued effect to all prior orders); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [Docket No. 381]

(giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [Docket No. 408] (giving orders, releases, and injunctions continuing effect); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) [Docket No. 647] (giving continued effect to previously entered orders, and approving broad releases); *In re Coach Am Grp. Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) [Docket No. 1568] (same); *In re ICL Holding Co.*, Case No. 12-13319 (KG) (Bankr. D. Del. Sept. 10, 2014) [Docket No. 1367] (same).

35. Given the circumstances of the Chapter 11 Cases, the Debtors and Committee submit that ample cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court during the Chapter 11 Cases to be given continued effect, notwithstanding the requested dismissal.

(3) The Court Should Authorize and Direct the Dissolution of certain Debtors Following Dismissal of the Chapter 11 Cases

36. The Debtors request that, upon dismissal of the Chapter 11 Cases, the Debtors listed in the Proposed Order shall be dissolved and wound up as corporate entities or limited liability companies, as the case may be, for all purposes other than winding up their affairs (including, without limitation, filing final tax returns and disposing of employee or business records) without the need for further action by this Court or the Debtors pursuant to 10 Del. Code § 7381, *et seq.* or other applicable state dissolution processes. Such relief has been granted under similar circumstances by this Court. *See In re Post-Sale CO II, LLC*, Case No. 10-13308 (CSS) (Bankr. D. Del. July 18, 2011) [Docket No. 468] ("[U]pon dismissal of the Debtors' cases, the Debtors shall be dissolved and wound up without any further action required by the Debtors or their members, managers or representatives."). Such relief has also been granted by this Court as a part of plans of reorganization and plans of

liquidation. *See, e.g.*, *In re ATLS Acquisition, LLC*, Case No. 13-10262 (LSS) (Bankr. D. Del. Aug. 15, 2014) [Docket No. 1502] ("On the Effective Date, and without the need for any further order of the Bankruptcy Court, action or formality which might otherwise be required under applicable non-bankruptcy laws, the Debtors shall be deemed dissolved without the need for any filings with the Secretary of State or other governmental official in each Debtors' respective state of incorporation or formation."); *see also In re Universal Cooperatives, Inc*., Case No. 14-11187 (MFW) (Bankr. D. Del. June 17, 2015) [Docket No. 1039].

37. The Debtors are no longer operating in the ordinary course of business and have no material assets other than cash. Upon dismissal of the Chapter 11 Cases, the Debtors' continued corporate existence will serve no purpose. It is therefore appropriate for the Court to direct the dissolution of certain Debtors or the filing of an ABC upon dismissal of the Chapter 11 Cases.

**E. Entry of Order Dismissing These Chapter 11 Cases**

38. The Debtors and Committee request that the Court enter an order dismissing the Chapter 11 Cases, effective upon the Dismissal Date (as defined in the Order).

## NOTICE

39. The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) Pachulski Stang Ziehl & Jones LLP, as counsel to the Committee; (c) King & Spalding LLP and Hunton Andrews Kurth LLP, as counsel to the agent under the Debtors' prepetition first lien debt facility and the Debtors' debtor-in-possession financing facility; (d) Morgan, Lewis & Bockius, LLP, as counsel to the agent under the Debtors' prepetition second lien debt facility; (e) all other holders of other debt instruments issued by the Debtors; (f) all parties asserting liens against the Debtors' assets; (g) counsel to equity holders of Debtor CraftWorks Parent, LLC; (h) the state attorneys general for all states in which the Debtors have operated; (i) the U.S. Attorney's Office

for the District of Delaware; (j) the Internal Revenue Service; (k) any party that requests service pursuant to Bankruptcy Rule 2002, and (l) *all known creditors of the Debtors* (collectively, the "Notice Parties"). The Debtors and Committee submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

40. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Left Blank Intentionally*]

WHEREFORE, the Debtors and Committee respectfully request that the Court (a) enter the Proposed Order in substantially the form attached hereto and (b) grant such other and further relief as may be just and proper.

Dated: August 4, 2020
Wilmington, Delaware

*<u>/s/ Domenic E. Pacitti</u>*
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 N. Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Email: dpacitti@klehr.com
Email: myurkewicz@klehr.com

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Telephone: (215) 569-2700
Email: mbranzburg@klehr.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman (admitted *pro hac vice*)
575 Madison Avenue
New York, NY 10022
Telephone: (212) 940-8800
Email: sreisman@katten.com

**KATTEN MUCHIN ROSENMAN LLP**
Peter A. Siddiqui (admitted *pro hac vice*)
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Email: peter.siddiqui@katten.com

*Attorneys for the Debtors and Debtors in Possession*

*<u>/s/ Bradford J. Sandler</u>*
**PACHULSKI STANG ZIEHL & JONES LLP**
Robert J. Feinstein (NY Bar No. 1767805)
Bradford J. Sandler (DE Bar No. 4142)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (courier 19801)
Telephone: (302) 652-4100
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*